Nos. 25-1517, -1518, -1519, -1520, -1521

IN THE

# United States Court of Appeals for the Federal Circuit

WUHAN CHINA STAR OPTOELECTRONICS SEMICONDUCTOR DISPLAY TECHNOLOGY CO., LTD.; TIANMA MICROELECTRONICS CO. LTD.; VISIONOX TECHNOLOGY, INC.,

*Appellants*,

*v.*

SAMSUNG DISPLAY CO., LTD.,

*Cross-Appellant*.

On Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board Nos. IPR2023-00987, IPR2023-00988, IPR2023-01075

## RESPONSE AND REPLY BRIEF OF APPELLANTS WUHAN CHINA STAR OPTOELECTRONICS SEMICONDUCTOR DISPLAY TECHNOLOGY CO., LTD.; TIANMA MICROELECTRONICS CO. LTD.; AND VISIONOX TECHNOLOGY, INC.


STEPHEN R. SMITH
EPHRAIM MCDOWELL
ELIAS S. KIM
COOLEY LLP
1299 Pennsylvania Avenue
NW Suite 700
Washington, D.C. 20004

MARK. R. WEINSTEIN
LOWELL D. MEAD
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304

*Counsel for Appellants*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 25-1517, -1518, -1519, -1520, -1521

**Short Case Caption** Wuhan China Star Optoelectronics Semiconductor Display Technology Co., Ltd. v. Samsung Display Co., Ltd.

**Filing Party/Entity** Wuhan China Star Optoelectronics Semiconductor Display Technology Co., Ltd.; Tianma Microelectronics Co., Ltd.; Visionox Technology, Inc.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 02/09/2026

Signature: /s/ Stephen R. Smith

Name: Stephen R. Smith

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br>☑ None/Not Applicable |
| Wuhan China Star Optoelectronics Semiconductor Display Technology Co., Ltd. | | |
| Tianma Microelectronics Co., Ltd. | | |
| Visionox Technology, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Donald Daybell | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

REPLY ARGUMENT ........ 3

- I. The Board Erred in Upholding the Challenged Claims of the ’578 Patent. ........ 3
  - A. The Board erred in rejecting Appellants’ showing that Matthies employs a pixel defining layer. ........ 4
    - 1. The Board erred in disregarding the ’578 patent’s admission that a pixel defining layer was known. ........ 4
    - 2. The Board misconstrued Appellants’ discussion of Matthies. ........ 11
  - B. The Board erred in rejecting Appellants’ showing that it would have been obvious to include a pixel defining layer in Matthies, including disregarding Yamada’s undisputed disclosure of a pixel defining layer. ........ 16
- II. The Board Erred in Upholding Two Dependent Claims of the ’803 and ’683 Patents. ........ 24
  - A. The Board erred in rejecting a motivation to combine Matthies and Yamada. ........ 25
    - 1. The Board erred in determining that Matthies is limited to passive-matrix displays. ........ 25
    - 2. The Board erred in its narrow understanding of the useful lifetime of Matthies’ display. ........ 34
  - B. The Board erred in rejecting a motivation to combine Murai and Yamada. ........ 38
    - 1. The Board erred in demanding a showing that the combination would produce only advantages. ........ 39

**TABLE OF CONTENTS**
**continued**

**Page**


2. The Board erred in finding that Murai's cutouts were not useful for OLEDs. .................... 40

CROSS-APPEAL STATEMENT OF THE ISSUES ................................ 42

CROSS-APPEAL SUMMARY OF ARGUMENT..................................... 43

CROSS-APPEAL ARGUMENT ............................................................ 45

I. Substantial Evidence Supports the Board's Finding That Claims 1-4 and 19-21 of the '803 Patent and Claims 1, 4-10, 13, and 15 of the '683 Patent Are Unpatentable As Obvious. .................................................... 45

A. The Board's finding that Phan renders obvious a pixel arrangement structure of an OLED display is supported by substantial evidence. .............................. 45

B. The Board's finding that Phan renders obvious the claimed "virtual square" is supported by substantial evidence...................................................... 66

CONCLUSION ....................................................................................... 79

CERTIFICATE OF COMPLIANCE........................................................ 81

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Display Sys., Inc. v. Kent State Univ.*,
212 F.3d 1272 (Fed. Cir. 2000) ........ 30

*Allied Erecting & Dismantling Co. v. Genesis Attachments, LLC*,
825 F.3d 1373 (Fed. Cir. 2016) ........ 32

*In re Antor Media Corp.*,
689 F.3d 1282 (Fed. Cir. 2012) ........ 63

*Apple Inc. v. Andrea Electronics Corp.*,
949 F.3d 697 (Fed. Cir. 2020) ........ 21, 36

*Applications in Internet Time, LLC v. RPX Corp.*,
897 F.3d 1336 (Fed. Cir. 2018) ........ 19

*In re Applied Materials, Inc.*,
692 F.3d 1289 (Fed. Cir. 2012) ........ 42

*Arendi S.A.R.L. v. Apple Inc.*,
832 F.3d 1355 (Fed. Cir. 2016) ........ 60

*Ariosa Diagnostics v. Verinata Health, Inc.*,
805 F.3d 1359 (Fed. Cir. 2015) ........ 17

*Belden Inc. v. Berk-Tek LLC*,
805 F.3d 1064 (Fed. Cir. 2015) ........ 56

*Bradium Techs. LLC v. Iancu*,
923 F.3d 1032 (Fed. Cir. 2019) ........ 46

*Creative Kingdoms, LLC v. Int'l Trade Comm'n*,
588 F.App'x 993 (Fed. Cir. 2014) ........ 65

*Donner Tech., LLC v. Pro Stage Gear, LLC*,
979 F.3d 1353 (Fed. Cir. 2020) ........ 6

## TABLE OF AUTHORITIES
## continued

**Page(s)**

*DSS Tech. Mgmt., Inc. v. Apple Inc.*,
885 F.3d 1367 (Fed. Cir. 2018) .......................................... 13, 20, 23, 60

*Elbit Systems of America, LLC v. Thales Visionix, Inc.*,
881 F.3d 1354 (Fed. Cir. 2018) ............................................................ 19

*Ericsson Inc. v. Intell. Ventures I LLC*,
890 F.3d 1336 (Fed. Cir. 2018) ......................................................... 9, 20

*Falko-Gunter Falkner v. Inglis*,
448 F.3d 1357 (Fed. Cir. 2006) ............................................................ 64

*Google LLC v. MindbaseHQ, LLC*,
No. 2023-1622, 2025 WL 2471511 (Fed. Cir. Aug. 28, 2025) ................................................................................................ 29

*Hockerson-Halberstadt, Inc. v. Avia Group International, Inc.*,
222 F.3d 951 (Fed. Cir. 2000) ....................................................... 75, 76

*Homeland Housewares, LLC v. Whirlpool Corp.*,
865 F.3d 1372 (Fed. Cir. 2017) .............................................................. 9

*Hytera Commc'ns Co. v. Motorola Sols, Inc.*,
840 F.App'x 569 (Fed. Cir. 2021) ......................................................... 32

*Intamin, Ltd. v. Magnetar Techs., Corp.*,
483 F.3d 1328 (Fed. Cir. 2007) ............................................................ 31

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007) ................................................................................ 12

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004) .............................................................. 31

*Merck Sharp & Dohme Corp. v. Hospira, Inc.*,
874 F.3d 724 (Fed. Cir. 2017) .............................................................. 60

## TABLE OF AUTHORITIES
## continued

**Page(s)**

*Otsuka Pharm. Co. v. Sandoz, Inc.*,
678 F.3d 1280 (Fed. Cir. 2012) .................... 51, 52

*Perfect Web Techs., Inc. v. InfoUSA, Inc.*,
587 F.3d 1324 (Fed. Cir. 2009) .................... 17

*Perricone v. Medicis Pharm. Corp.*,
432 F.3d 1368 (Fed. Cir. 2005) .................... 8

*Pfizer, Inc. v. Apotex, Inc.*,
480 F.3d 1348 (Fed. Cir. 2007) .................... 33

*PGS Geophysical AS v. Iancu*,
891 F.3d 1354 (Fed. Cir. 2018) .................... 58

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
849 F.3d 1360 (Fed. Cir. 2017) .................... 76

*Qualcomm Inc. v. Apple Inc.*,
24 F.4th 1367 (Fed. Cir. 2022).................... 5, 7

*Randall Mfg. v. Rea*,
733 F.3d 1355 (Fed. Cir. 2013) .................... 23

*Raytheon Techs. Corp. v. Gen. Elec. Co.*,
993 F.3d 1374 (Fed. Cir. 2021) .................... 64, 65

*Realtime Data, LLC v. Iancu*,
912 F.3d 1368 (Fed. Cir. 2019) .................... 15

*Rovalma, S.A. v. Bohler-Edelstahl GmbH & Co. KG*,
856 F.3d 1019 (Fed. Cir. 2017) .................... 17

*Salix Pharms., Ltd. v. Norwich Pharms. Inc.*,
98 F.4th 1056 (Fed. Cir. 2024).................... 24

*Schwendimann v. Neenah, Inc.*,
82 F.4th 1371 (Fed. Cir. 2023).................... 55, 63, 78

**Page(s)**

*Skky, Inc. v. MindGeek, S.A.R.L.*,
859 F.3d 1014 (Fed. Cir. 2017) .......... 38

*Uber Techs., Inc. v. X One, Inc.*,
957 F.3d 1334 (Fed. Cir. 2020) .......... 13

*Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*,
683 F.3d 1356 (Fed. Cir. 2012) .......... 11

## INTRODUCTION

Samsung's response leaves unrebutted multiple material errors by the Board that justify vacating and remanding on Appellants' challenges to the '578 patent, claim 5 of the '803 patent, and claim 2 of the '683 patent.

Appellants showed that the Board erred when it found that Appellants identified no acknowledgement in the '578 patent that a pixel defining layer was previously known in the art. Appellants repeatedly identified multiple admissions in the patent stating exactly that. Samsung does not rectify the Board's error, and does not dispute that the '578 patent admits the claimed "pixel defining layer" was known in the prior art. This error by the Board alone justifies vacatur, given that the patentee's binding admission provides a factual foundation for what a skilled artisan would have known for purposes of obviousness.

Samsung likewise leaves unrebutted the fact that Yamada discloses a pixel defining layer, which further informs a skilled artisan's background knowledge of this limitation. Samsung effectively concedes that Yamada discloses this feature, as it did before the Board.

Samsung does not argue, let alone demonstrate, that substantial evidence supports the Board's erroneous *sua sponte* finding that Yamada does not disclose a pixel defining layer.

For these reasons, the Board's finding that the "pixel defining layer" of the '578 patent was not obvious rested on a fundamentally defective foundation. By overlooking undisputed evidence in the record establishing that the claimed pixel defining layer was known in the art, the Board effectively regarded the patentee as having invented that feature. This fundamental error tainted the Board's obviousness analysis and requires vacatur and remand.

Samsung's response on the '803 and '683 patents perpetuates the Board's errors as to the two claims not found invalid. Samsung, like the Board, improperly reads Matthies' disclosures in isolation and takes an unduly selective and restrictive approach to obviousness that fails to properly account for the references' relevant teachings that a skilled artisan would have appreciated.

Samsung's cross-appeal fares no better. Substantial evidence supports the Board's findings that claims 1-4 and 19-21 of the '803 patent and claims 1, 4-10, 13, and 15 of the '683 patent are obvious.

Samsung raises meritless challenges on two limitations: the OLED display limitation of both patents, and the “virtual square” limitation of the ’803 patent. As the Board correctly found, both limitations are obvious in view of Phan, which expressly identifies OLED displays as among the “display technologies” that can employ its invention and teaches regularly disposed pixels rendering obvious the “virtual square.” Samsung ignores much of the Board’s cited evidence and resorts to modified figures that would thwart the dynamic pixels at the heart of Phan’s invention. None of Samsung’s arguments undermines the substantial evidence supporting the Board’s findings.

The Court should affirm as to Samsung’s cross-appeal, and vacate and remand as to Appellants’ appeal.

## REPLY ARGUMENT

### I. The Board Erred in Upholding the Challenged Claims of the ’578 Patent.

Appellants demonstrated that the Board erred in rejecting their obviousness showing based on the “pixel defining layer” limitation. Opening Brief (“OB”) at 35-58. Samsung does not meaningfully dispute that the ’578 patent acknowledges that pixel defining layers were known. *Infra* § I.A.1. Samsung also does not dispute that Yamada

discloses a pixel defining layer. Because the Board erroneously found otherwise on both points, this case should be remanded with appropriate instructions for the Board to redo its analysis. *Infra* § I.B.

### A. The Board erred in rejecting Appellants' showing that Matthies employs a pixel defining layer.

The Board erred in rejecting Appellants' showing that a skilled artisan would have understood that Matthies employs a pixel defining layer, when the '578 patent explicitly acknowledges it was a "known" feature. OB36-45.

#### 1. The Board erred in disregarding the '578 patent's admission that a pixel defining layer was known.

Samsung does not dispute that the '578 patent repeatedly acknowledges that pixel defining layers were known in the art. Appx296 1:36-44 ("pixel definition layer" was known in "Related Art"), Appx297 4:1-12 ("pixel defining layer" was "known in the art"). And Samsung cannot escape the well-settled law that a patent's statement that a feature is known in the prior art is "binding" on the patentee for determinations of obviousness. OB38 (collecting authorities). These concessions doom Samsung's attempt to defend the Board's flawed analysis.

Samsung is wrong when it claims Appellants did not raise to the Board that the '578 patent acknowledged that pixel defining layers were known. Corrected Cross-Appellant's Principal & Response Brief ("AB") at 56-57. Appellants repeatedly raised this point in their petition, reply, expert testimony, and hearing presentation. *See* Appx1476 (quoting Appx297 4:1-13); Appx1810 (quoting Appx296-297 1:36-44, 4:1-12); Appx7446; Appx940-941.

Appellants also showed that Matthies uses the same "known" prior art "configuration[]" referenced in the '578 patent. Appx297 4:4-11; OB39-43. Samsung contends Appellants "advance[] only attorney argument" that Matthies has a pixel defining layer and failed to provide expert testimony. AB56. But Appellants did not need expert testimony when the patent itself contains a binding admission that this feature was known in the art. *Qualcomm Inc. v. Apple Inc.*, 24 F.4th 1367, 1375-76 (Fed. Cir. 2022) ("'it is appropriate to rely on admissions in a patent's specification when assessing whether that patent's claims would have been obvious' in an *inter partes* review proceeding.") (citation omitted).

Moreover, Samsung misstates the record: Appellants' expert walked through the '578 patent's disclosures and opined that the pixel defining layer was based on "configurations in the art." Appx7446. Samsung's incorrect assertion that "[Appellants'] expert did not even cite the patent's description of the pixel defining layer," AB57 (citing Appx7446-7447 ¶¶ 156, 159-160; Appx7449 ¶ 170), inexplicably omits expert testimony quoting the '578 patent's admissions on the pixel defining layer, *see* Appx7446 ¶¶ 154-155 (quoting Appx296 1:42-44; Appx297 4:1-13).

Despite Appellants and their expert repeatedly discussing and citing the '578 patent's acknowledgment that the pixel defining layer was known, the Board incorrectly found that Appellants "do[] not identify any acknowledgement or admission in the '578 patent that the inclusion of a 'pixel defining layer' was previously known in the art." Appx254. The Board's failure to address the undisputed, highly relevant admissions in the '578 patent was arbitrary and capricious and renders its analysis and conclusion ill-founded. *See* OB42 (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)); *Donner Tech., LLC v. Pro Stage Gear, LLC*, 979 F.3d 1353, 1359

(Fed. Cir. 2020) ("Given the Board's mistaken assertion to the contrary, it is unclear whether the Board meaningfully considered all of [petitioner's] arguments and evidence."). This Court's precedents make clear that "the assessment of a claim's patentability is inextricably tied to a skilled artisan's knowledge and skill level." *Qualcomm Inc.,* 24 F.4th at 1376. Because the Board clearly erred in failing to consider evidence directly relevant to the knowledge of a skilled artisan, the decision must be vacated.

Similarly, the Board's flawed charge of "hindsight" flowed directly from the Board's error of overlooking evidence of the undisputed lack of novelty in the claimed pixel defining layer. *See* OB42-43 (collecting authorities). Appellants' reliance on evidence that the claimed pixel defining layer was known in the art is the polar opposite of impermissible hindsight analysis. As Appellants explained, "a patentee's admissions about the scope and content of the prior art provide a factual foundation as to what a skilled artisan would have known at the time of invention." OB38 (quoting *Qualcomm Inc.*, 24 F.4th at 1376). Samsung ignores Appellants' authorities and leaves this critical point unrebutted. *See* AB56.

Likewise, Samsung misses the mark when it labels Appellants' argument a "non sequitur." AB57. Samsung says the fact that a pixel defining layer may have been "known" at the time of the '578 patent "does not require or imply that Matthies' device must have contained one." AB57. This argument is nonresponsive to this Court's caselaw that imposes a patentee's admissions as binding. *See* OB38 (collecting authorities holding that, "[b]y characterizing certain parts as conventional in the specification, the patentee effectively admits that such things would be known to a POSA" (citation omitted)).

Nor are Appellants making an inherency argument. *Contra* AB57. A prior-art reference may anticipate by inherency, but obviousness considers the knowledge of those of ordinary skill in the art. *See Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1375-76 (Fed. Cir. 2005). Appellants did not argue Matthies inherently contains a pixel defining layer. Appellants instead argued such a layer would have been obvious in Matthies in view of the background knowledge of a skilled artisan—background knowledge the '578 patent expressly admitted but the Board ignored. Responding to an inherency argument Appellants did not make, Samsung asserts Yamada's Figure 6A does

not have planarization layer 167 like Figure 6B does, AB57-58, but Samsung does not dispute that Yamada's Figure 6B—the figure Appellants cited—does teach a pixel defining layer. *Infra* § I.B.

Samsung incorrectly contends Appellants raise a new argument that there is a "finite set of well-known design choices," OB42-43, and argues that adding a pixel defining layer would cause "functional problems." AB59-60. But Appellants merely reiterate on appeal a relevant implication of Appellants' showing throughout this case: a pixel defining layer was a well-known design choice in the art, making it one of "a finite set of 'well-known design choices.'" OB42-43 (collecting authorities). Regardless, the Board did not cite or credit Samsung's evidence purporting to show "functional problems." Such a finding would lack substantial evidence in any event, since Samsung's expert testimony is flatly inconsistent with Matthies' express teaching of additional layers to improve performance. *Cf. Ericsson Inc. v. Intell. Ventures I LLC*, 890 F.3d 1336, 1346 (Fed. Cir. 2018) (holding that even expert testimony cannot be substantial evidence when it "contradict[s] a reference"); *Homeland Housewares, LLC v. Whirlpool Corp.*, 865 F.3d

1372, 1378 (Fed. Cir. 2017) ("[W]e must disregard the testimony of an expert that is plainly inconsistent with" what the prior art teaches).

Although not necessary to warrant vacatur given the patent's binding admission, due weight should also be given to Samsung's admission during the IPR proceedings that a pixel defining layer "must be included for the OLED display to operate properly." Appx1551 n.1 (citing Appx297 4:1-6); *see* OB37-38. Samsung claims Appellants took the footnote "out of context," and that it was merely "describing Figure 5 of the '578 patent … and explaining why that display has non-light-emitting ... areas." AB58-59. But the footnote is not limited to Figure 5. The footnote describes "all [that] must be included *for the OLED display*"—in general—"to operate properly." Appx1551 n.1 (emphasis added). The footnote also cites the '578 patent's general disclosure, *see* Appx297 4:1-6, which does not mention Figure 5. And Samsung's assertion that the footnote is about Figure 5 because Figure 5 "has non-light-emitting components," AB59, is meritless because *every* OLED display contains non-light emitting components, *see* Appx296 1:36-45.

Finally, although again unnecessary to justify vacatur, Appellants' citations to the Smith and Seo prior art consistent with the '578 patent's

admissions are neither "underdeveloped" nor forfeited. AB58 (citing OB37); *see* AB67-68. Appellants made the same substantive argument to the Board and cited each reference. *See* Appx1811 (citing Appx7665 6:38-63 (Seo prior-art reference showing both active and passive-matrix displays employing the same pixel surrounding "insulating bank")); Appx942-943 (discussing Seo); Appx1531 (citing Appx3231 [0010]) (discussing Smith disclosing different "'shapes' for the 'colour-forming regions' of a pixel [that] were … known and in use at the time the '578 patent was filed"). Appellants also properly addressed Smith and Seo in the opening brief to "[f]urther underscor[e]" their assertion that the '578 patent describes pixel defining layers as configurations known in the art. *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356, 1360 n.3 (Fed. Cir. 2012).

Because the Board erroneously overlooked evidence conclusively establishing that the claimed "pixel defining layer" was known, this Court should remand.

#### 2. The Board misconstrued Appellants' discussion of Matthies.

Appellants further showed that the Board erred in requiring Matthies' Figures 3 and 10B to expressly "call[] out" the space between

the active areas "with a reference number" labeling it as a pixel defining layer, and in misunderstanding Appellants' showings in the alternative of a pixel defining layer in Matthies. OB43-45.

At the outset, Samsung claims Appellants presented a single annotated version of Figure 10B as the basis for their arguments and did not explain other figures. AB55. This is incorrect, because Appellants also cited Matthies' Figure 3, OB39-40 (citing Appx1475).

Samsung's remaining arguments attempting to parse Matthies and Yamada are unavailing. Samsung continues to demand an explicit "teaching [or] suggestion," when that is not the law. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007); *contra* AB50-54. Samsung argues that the Board did not require an express disclosure, AB53, but that is what the Board did. *See* OB43-44; Appx253; Appx257. Samsung repeats that error, arguing that Appellants' annotation was "misleading" because Matthies does not already contain that label. AB51-53 (citing Appx7775-7776 ¶¶ 186-187). That reasoning—that Matthies does not render this limitation obvious because Matthies does not already label that feature—is circular and contradicts obviousness

law. *See Uber Techs., Inc. v. X One, Inc.*, 957 F.3d 1334, 1341 (Fed. Cir. 2020); OB43-44.

Samsung also claims Matthies does not disclose a pixel defining layer because Matthies is limited to passive-matrix displays, relying on evidence the Board did not credit. AB50-51 (citing Appx7737-7738 ¶ 117; Appx7772-7773 ¶ 182).[1] But Matthies is not limited to passive-matrix displays, and in any event, this Court cannot rely on evidence the Board did not. *See DSS Tech. Mgmt., Inc. v. Apple Inc.*, 885 F.3d 1367, 1376 n.4 (Fed. Cir. 2018) ("Under the *Chenery* doctrine, we decline [the] invitation to consider evidence that the Board did not cite in its decision."); *infra* § I.B. Regardless, the '578 patent's acknowledgment that pixel defining layers were "known" in the art was not limited to active-matrix displays. *Supra* § I.A.1. And Appellants explained that a skilled artisan would have understood that a pixel-defining *insulation layer* could apply equally to both active- and

[1] Samsung erroneously suggests that the Board's factual findings in the '803 and '683 patent proceedings apply to the '578 patent proceedings. AB48. But the Board did not apply any findings from one proceeding to another. *See* Appx228-261.

passive-matrix displays, which Samsung did not rebut. OB51-52 (citing Appx1811).

Samsung argues Matthies does not mention a pixel defining layer in its manufacturing process and materials. AB51-52 (citing Appx3094-3095 12:58-13:26). But Matthies expressly contemplates other layers to improve the function of the display. *See* OB51; Appx1811. And Samsung's argument is contradicted by the '578 patent's teaching of such a layer's known utility and Samsung's admission that such a layer is necessary for the OLED display. *See* Appx296 1:42-44; Appx1551 n.1; *supra* § I.A.1. And contrary to Samsung's claims, Appellants and their expert did respond to these manufacturing points in reply. *See* Appx1810-1811 (explaining that Matthies teaches that additional layers may be present).

Samsung contends its patent does not have a section 112 problem because the '578 patent "describes" the pixel defining layer, which "defines the areas of the pixels." AB53-54. Samsung's response, however, merely indicates that a pixel defining layer is simply any layer that "defines the areas of the pixels," which Matthies renders obvious in view of the background knowledge of a skilled artisan.

Samsung asserts the Board did not err in faulting Appellants for making allegedly inconsistent arguments about Matthies. AB54 (citing Appx253-254); *see* Appx63-64. Samsung continues to claim that Appellants' showing that "the pixel-forming elements (324 and 326) themselves define the active area of the pixels" OB44 (citing Appx1477-1478; Appx1810-1811), is inconsistent with adding "another layer" around those elements. AB54-55. But Appellants demonstrated two different ways Matthies renders the limitation obvious: pixel forming elements 324 and 326 themselves obviously would provide a pixel defining layer by "defin[ing] the active area of the pixel" in a layered configuration, and it would have been obvious to add an insulating layer surrounding the pixels' active areas. *See* Appx941 (explaining these two ways); OB40-41 (citing Appx3094-3095 12:62-65, 13:1-5, 13:10-11; Appx7448), OB44-46 (citing further evidentiary support including expert testimony). Samsung fails to acknowledge Appellants' evidence supporting each theory. There is no inconsistency in Appellants' two alternative theories. *E.g.*, *Realtime Data, LLC v. Iancu*, 912 F.3d 1368, 1372-73 (Fed. Cir. 2019) (approving obviousness showing based on a single reference where petitioner "argued *in the alternative*" that "some

of the elements in the claims at issue" were disclosed in a second reference).

### B. The Board erred in rejecting Appellants' showing that it would have been obvious to include a pixel defining layer in Matthies, including disregarding Yamada's undisputed disclosure of a pixel defining layer.

Appellants showed, alternatively, that the Board erred in failing to find that a skilled artisan would have found it obvious to add a pixel defining layer to Matthies. OB45-58.

Appellants pointed to Yamada as illustrating the background knowledge of a skilled artisan because Yamada teaches a pixel defining layer, as Samsung did not dispute before the Board and continues not to dispute. OB47. Appellants showed why the Board erred in refusing to recognize that Yamada discloses a pixel defining layer. OB52-58; AB60-71. Samsung never argues—much less demonstrates—that substantial evidence supports the Board's *sua sponte* finding that Yamada does not disclose the claimed pixel defining layer. *See* AB57-58; AB60-71. Because Samsung does not dispute Yamada discloses a pixel defining layer that would have been part of a skilled artisan's background knowledge for obviousness, but the Board inexplicably found otherwise, this error alone warrants remand.

Appellants showed that the Board apparently excluded Yamada's pixel defining layer based on an incorrect claim interpretation that neither side advanced (OB52-58), and Samsung does not meaningfully rebut that showing. Samsung instead fashions an alternative characterization of the Board's finding, as somehow based on "structural differences" between Matthies and Yamada. AB70 (citing Appx255-257). But that is not what the Board found, *see* Appx255-257, so this Court cannot rely on Samsung's substituted ground for affirmance. *See Ariosa Diagnostics v. Verinata Health, Inc.*, 805 F.3d 1359, 1365 (Fed. Cir. 2015).

Samsung's response to the Board's erroneous disregard of Yamada is largely misguided. It says Appellants "waived" reliance on "a combination of Matthies and Yamada." AB66 (citing OB52 n.3). But Appellants never argued such a "combination" in a narrow sense. The Board instead failed to consider Yamada's pixel defining layer as illustrating the *background knowledge of a skilled artisan* relevant to a skilled artisan's consideration of Matthies. *See Rovalma, S.A. v. Bohler-Edelstahl GmbH & Co. KG*, 856 F.3d 1019, 1027 (Fed. Cir. 2017); *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1329 (Fed. Cir.

2009). Samsung's argument about a "motivation to combine" Seo and Matthies is likewise misplaced, AB68, since Seo illustrates the background knowledge of a skilled artisan. OB47-48.

Appellants also showed why the Board's myopic focus on the word "could" misconstrued Appellants' substantive showing that a "*POSITA would have understood that* Matthies employs (or at least could obviously employ) the claimed 'pixel defining layer.'" Appx251 (emphasis added); OB48-50. The relevant point for obviousness here is *the POSITA's understanding* in the relevant context—and the relevant context includes the '578 patent's admissions that pixel defining layers were known, which the Board erroneously omitted. Samsung itself continues to criticize Appellants' use of "could," and claims Appellants failed to address motivation to modify in their reply. AB61-63. But Appellants' reply addressed motivation to modify based on Matthies' disclosure of "'[a]dditional' undepicted 'layers.'" Appx1811.

Samsung does not engage with, much less rebut, Appellants' showing that the Board improperly faulted Appellants for purportedly not showing a "benefit" to including a pixel defining layer in Matthies, when Appellants plainly provided both. OB45-48 (discussing

Appellants' showing of benefits). Samsung's response is entirely conclusory. AB63 (citing Appx252-259 with no elaboration). Instead, the Board did not address Appellants' evidence because it asserted there was none. OB49-50. This was procedural error. *See Applications in Internet Time, LLC v. RPX Corp.*, 897 F.3d 1336, 1353 (Fed. Cir. 2018). Samsung's citation to *Elbit Systems of America, LLC v. Thales Visionix, Inc.*, AB62, is inapposite, because there the Board addressed the evidence before it. 881 F.3d 1354, 1359 (Fed. Cir. 2018).

Samsung's arguments about a purported lack of benefit to modifying Matthies also lack merit. For instance, Samsung argues Appellants did not show a motivation to modify Matthies to add a pixel defining layer. AB61. But Appellants did show motivation to modify in view of both Matthies and Yamada. *See* OB46-48; Appx7446-7450. And contrary to Samsung's assertion that the Board considered Matthies' disclosures, AB63, the Board failed to consider the background knowledge of a skilled artisan informed by Yamada in doing so, OB46-48.

Samsung also asserts there is no benefit to adding a pixel defining layer because Matthies already has insulating layers. AB69. But

Samsung's own citations defeat its point, showing that Matthies itself contemplates multiple "layers," AB69 (citing Appx3095 13:16-21; Appx3092 7:28-31), and Matthies further teaches that "[a]dditional layers" may "improve the function or life of the display layers." Appx3091 6:36-38. Samsung's suggestion that any benefits are limited to preventing "electrical shorts" or "planarization," AB69, contradicts Matthies, which teaches that such benefits are not exhaustive, *see* Appx3091 6:36-38.

Samsung is also wrong to claim it offered "unrebutted" testimony that there is no benefit to adding a pixel defining layer to Matthies. AB61-62; AB69. Appellants showed that such testimony was contradicted by Matthies, which expressly disclosed additional layers to "improve" its exemplary embodiment. *See* Appx942-943; Appx3091 6:36-38; *cf. Ericsson*, 890 F.3d at 1346 (holding that even expert testimony cannot be substantial evidence when it "contradict[s] a reference"). Samsung also cites portions of its expert testimony not cited by the Board, AB61-62 (citing Appx7772-7773 ¶ 182; Appx7737-7738 ¶ 117), which cannot supply an alternate basis for affirmance, *see DSS*, 885 F.3d at 1376 n.4.

Samsung argues Appellants' quotation (at OB46) of Matthies is "misleading" because it omits the language "such as blocking or passivation layers," which Samsung notes are not pixel defining layers. AB64. This misses the point: this disclosure supports the obviousness of adding "[a]dditional layers" to Matthies. Appx3091 6:28-38. Similarly beside the point is Samsung's citation to expert testimony about "resizing" pixels to dispute adding an isolation layer, which is inapposite and was not cited by the Board. AB64-65 (citing Appx7737-7738 ¶ 117; Appx7772-7773 ¶ 182). Likewise meritless is Samsung's repeated assertion that Matthies is limited to a passive-matrix design. AB71; *see supra* § I.A.2.

Samsung argues Appellants quoted a passage not referenced in the petition to argue Matthies suggests adding a "structural layer" such as an "insulator." AB65 (citing OB46). But Samsung does not dispute that Appellants properly raised this in reply, *see* Appx1811, so the Board should have considered it, *cf. Apple Inc. v. Andrea Electronics Corp.*, 949 F.3d 697, 706-07 (Fed. Cir. 2020). Samsung claims this layer could be "metal" and that this means it cannot be the pixel defining layer because any metal "between Matthies' electrodes (as would be

necessary to define pixels)" would "short the display." AB65. This argument is baseless. There is no requirement that the pixel defining layer must be placed "between Matthies' electrodes."

Samsung claims Appellants did not "expressly link[]" Matthies' discussion of additional layers with "benefits" of using Yamada's insulation layer, AB69, but notably, the Board refused to entertain such a finding since it disregarded Yamada's teachings entirely. And Appellants *did* make this link: Appellants' petition stated, "Matthies also explains that various other 'layers' 'may be present to improve the function or life of the display layers.'" Appx1478 (quoting Appx3091 6:37-38). Appellants then explained such a layer could be "insulation" and that "Yamada provides an example" in "planarization insulating film 167." Appx1478. And Appellants invoked expert testimony discussing the benefits of Yamada's planarization insulating film 167. Appx1479 (citing Appx7449-7450 (discussing benefits of Yamada's insulation film)). This provided the "express[] link" between Matthies' disclosure and benefits of an insulation layer that Samsung claims was missing.

Samsung likewise claims Appellants did not make a showing of benefits in the petition, only in its expert declaration. AB68-70. This is incorrect, as just discussed. *See* Appx1478-1479. Appellants also cited their expert's declaration, *see* Appx1479, but the Board erred in failing to address that evidence, *see Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013). Appellants' expert explained the "various, well-known purposes" that an insulating film, such as the kind in Yamada, would serve in Matthies. Appx7450. Appellants' showing of benefits is not forfeited. *Contra* AB68.

Finally, contrary to Samsung's suggestion, AB60, the Board did not reach reasonable expectation of success. Samsung appears to refer to the portion of the Board's block quote of Samsung's argument on motivation to modify. Appx258 (quoting Appx1710). But the Board did not adopt Samsung's arguments besides its criticism of the word "could," so the Court cannot affirm on the bases offered by Samsung. OB50; *DSS*, 885 F.3d at 1376 n.4. And the only testimony Samsung's expert offered on reasonable expectation of success, such as avoiding additional manufacturing steps, mirror those on motivation. Appx7772-7773; Appx7777-7778. Regardless, the background knowledge informed

by Yamada that the Board improperly ignored is relevant for reasonable expectation of success, too. *Salix Pharms., Ltd. v. Norwich Pharms. Inc.*, 98 F.4th 1056, 1062-63 (Fed. Cir. 2024).

## II. The Board Erred in Upholding Two Dependent Claims of the '803 and '683 Patents.

Appellants demonstrated ample motivation to combine (1) Matthies and Yamada and (2) Murai and Yamada. *See* OB58-81. On Matthies and Yamada, the Board wrongly recast Matthies as passive-matrix-only, demanded proof of physical combination, and excluded Appellants' "useful lifetime" argument that was first presented in Appellants' petitions and permissibly elaborated upon in reply. *See* OB60-75. On Murai and Yamada, the Board insisted that the combination only produce upside and ignored a wealth of benefits, and it declared Murai's cutouts were "not useful" for OLEDs despite the reference expressly contemplating application to OLEDs. *See* OB75-81.

Samsung repackages the Board's mistakes. On Matthies, it parses every reference in Matthies to dodge its active-matrix teachings, presses a "physical incompatibility" argument that is plainly inconsistent with this Court's precedent, and mostly ignores references in Appellants' petitions to the "useful lifetime" obviousness rationale.

*See* AB29-47. On Murai, Samsung asserts without support that the Board weighed other benefits even though the Board fixated on reduced aperture ratio, and it denies the Board's express statements that Murai's cutouts are not useful for OLEDs. *See* AB71-74. None of this rehabilitates the Board's legally deficient analysis.

### A. The Board erred in rejecting a motivation to combine Matthies and Yamada.

#### 1. The Board erred in determining that Matthies is limited to passive-matrix displays.

Before the Board and again in their opening brief, Appellants canvassed the wealth of evidence that Matthies' OLED pixel arrangement applies to active-matrix displays. *See* OB62-64. That includes, for example, the facts that Matthies explicitly mentions both "active and passive" electronics and circuits, *see* Appx3092 7:15-19, 7:42-45; Matthies teaches that such electronics can be formed "by processes such as those now used to make active matrix circuits," Appx3092 8:21-26; Matthies incorporates by reference a patent that depicts a "completely active drive of the display," Appx3320-3321 6:67-7:1; and Appellants' expert explained how an active-matrix display is

technologically compatible with Matthies, including through Matthies' electrical vias, *see* Appx3328-3329.

Samsung makes two principal arguments to dismiss all this evidence. First, Samsung contends that Appellants' active-matrix argument is "based on the fallacy that any use of the word 'active' in Matthies is a reference to an active-matrix display," AB35, and (like the Board) piecemeal parses Matthies' use of the word "active." Second, Samsung contends that "it is not obvious to combine prior art involving incompatible technologies." AB38. Both arguments are meritless.

Appellants explained that the Board "failed to consider what th[e] evidence fairly suggested and instead took each individual reference in Matthies to 'active'—whether to 'active' components, 'active' circuits, or 'active matrix'—and distinguished them one by one." OB64. Samsung does the same thing, distinguishing between active elements and components such as transistors and an active-matrix display. *See* AB35-36. But all these references to "active" components and circuits must be considered together along with all the other relevant evidence in Matthies—including the active-matrix display in a patent incorporated by reference, the explanation of how active-matrix displays

are technologically compatible with Matthies, and the reference to the processes for making active-matrix displays. *See* OB66-67.

Just like the Board, Samsung does not explain why Matthies would discuss "active" "electronics," "circuits," "display[s]," "devices," and "pixel driving circuitry" but not suggest an active-matrix display. Instead, Samsung pushes back on Appellants' point that "the primary distinction between an active matrix circuit and a passive matrix circuit is the presence of active components," observing that "[n]o evidence supports [Appellants'] claim" because Appellants "cite[] only a hearing transcript." AB36 n.2. That hearing transcript, however, discusses record evidence—including Samsung's own exhibits—that supports this point:

> The active matrix circuit includes active components like transistors and capacitors in association with each pixel, while the passive matrix circuit does not. And you can see that at [Samsung's] own exhibits. For example, Exhibit 2073 … as page eleven shows a basic graphical overview distinction between a passive matrix OLED and an active matrix OLED. And what's the main difference? There are active components, including a transistor and a capacitor in each pixel in the active matrix display, and there are not such components in the passive matrix display. So, by saying that its pixel driving circuitry can include active components, Matthies is of course pointing a POSITA to circuits that use such components.

Appx853-854; *see also* Appx4849 (showing the difference between active- and passive-addressing architectures). This both undermines Samsung's substantive point by demonstrating that the difference between active and passive displays is, in fact, active components; and refutes Samsung's assertion that "[n]o evidence supports [Appellants'] claim."

In response, Samsung makes uncontested points that do not move the ball. It emphasizes that "use of the word 'active' in Matthies" is not a "reference to an active-matrix display," AB35; that not everything with an "active" circuit or "active" electronics is even a display, *see* AB36; and that "[Appellants'] expert … admitted an 'active circuit' is a circuit containing a combination of active and passive elements." AB36. But none of this changes the fact that active components are what make a display active—even if active components may appear alongside passive components or in non-display devices. *See* OB62-64.

Moreover, Matthies explicitly references "processes such as those now used to make active matrix circuits." Appx3092 8:21-26. Samsung's response is to reprise the Board's conclusion that this "merely describes techniques for manufacturing electronic circuits."

AB36. As Appellants explained, however, this statement came in the context of Matthies' reference to "[e]lectronics … in the broadest sense to include both active and passive," and it shows that Matthies contemplated use of manufacturing processes used to make active-matrix circuits. OB66. Samsung's response is silence.

Nor does Samsung provide a meaningful response to other probative evidence Appellants marshalled before the Board. That includes the fact that Matthies incorporates by reference the prior art '327 patent teaching an example active-matrix display. Samsung asserts that Appellants "did not cite or discuss the '327 patent in its petition, its reply brief, or the hearing," that the "only reference to it appears in one paragraph of Dr. Pattison's reply declaration," and that "arguments raised only in an expert declaration are waived." AB47. Samsung is wrong. First, this Court has held that the Board abuses its discretion when it fails to consider cited expert testimony in support of arguments. *See, e.g.*, *Google LLC v. MindbaseHQ, LLC*, No. 2023-1622, 2025 WL 2471511, at *5 (Fed. Cir. Aug. 28, 2025). And Appellants' IPR reply brief cited to the portion of its reply expert declaration discussing the incorporated '327 patent (Appx3326 ¶ 6) to support Appellants'

argument that "a POSITA plainly would have understood—just as Matthies itself states—that Matthies' OLED pixel arrangements can be used in both passive- and active-matrix displays." (Appx1801-1802 at 3-4 (citing Appx3326-3329 ¶¶ 6-16).) Moreover, the '327 patent is incorporated by reference into Matthies, meaning it may be considered as part of the Matthies prior art disclosure. *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000).

Nor does Samsung meaningfully respond to the fact that Matthies includes claims that specify "pixel driving circuitry" that can "provide a plurality of electrical signals which are conditioned to activate respective ones of the plurality of pixel structures." Appx3103 29:23-25. Or the fact that Appellants presented expert testimony that a POSITA would not consider Matthies to be talking about disembodied active and passive components. All this evidence goes unrebutted.

The best Samsung can offer affirmatively to cabin Matthies to a passive matrix display is that one embodiment—Figure 8B—of Matthies is passive. But "this is just an embodiment. It is not the extent of Matthies teachings." Appx852. "[A] narrow disclosure in the specification does not necessarily limit broader claim language," and

here, "[t]he single reference does not expressly limit the entire invention but only describes a single embodiment." *Intamin, Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328, 1335 (Fed. Cir. 2007); *see also Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004).

Samsung next reprises the Board's improper physical combination requirement, arguing that "the technologies are incompatible and could not be combined by a POSITA." AB39; *see also* AB38 (contending that "it is not obvious to combine prior art involving incompatible technologies").

This argument misses the mark. Samsung contends that the "technologies are incompatible" because "[Appellants] ha[ve] not cited any evidence of anyone ever resizing individual pixels in a passive-matrix display." AB39; *see* AB33 (contending that "[Appellants'] 'proposed re-sizing is incompatible with' Matthies' passive-matrix design"); AB40 (discussing potential morphological defects with resizing pixels in a passive-matrix display). But Matthies contemplates *active*-matrix displays, and Samsung does not dispute that the pixels in active-matrix displays can be resized without issue. So arguing about

difficulties in resizing pixels in a passive-matrix display misses the point.

This argument is also contrary to well-established precedent. "The test for obviousness is not whether the features of a secondary reference may be bodily incorporated into the structure of the primary reference." *Allied Erecting & Dismantling Co. v. Genesis Attachments, LLC*, 825 F.3d 1373, 1381 (Fed. Cir. 2016); *see also* OB68-69 (collecting cases). Samsung's only citation for its argument is an unpublished case it mischaracterizes. Samsung cites *Hytera Communications* as "affirming [the] Board's determination that combining references involving 'incompatible communication protocols' is not obvious." AB38-39 (citing *Hytera Commc'ns Co. v. Motorola Sols, Inc.*, 840 F.App'x 569, 575 (Fed. Cir. 2021)). But the word "incompatibility" in *Hytera* is *part of the claim language* of the relevant patent in that case, not a legal requirement. And Hytera had "challenge[d] the Board's finding that [the prior art] does not teach or render obvious radio sub-networks that have 'incompatible communication protocols,' as in system claim 11." *Hytera*, 840 F.App'x at 575. Samsung's misrepresentation of this non-

precedential decision does not support the improper physical combination requirement the Board imposed and Samsung urges.

Finally, Samsung concedes that the bar is quite low for a "reasonable expectation of success" in combining Matthies and Yamada: considering whether "the skilled artisan would have had *no expectation of success*." AB39 (quoting *Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc.*, 18 F.4th 1377, 1380-81 (Fed. Cir. 2021)); *see Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1364, 1367-68 (Fed. Cir. 2007) (the "expectation of success need only be reasonable, not absolute"). Here, however, the Board erroneously imposed a threshold "physical combination" requirement contrary to this Court's precedent that derailed its "expectation of success" analysis.

Finally, the Board erred in concluding that Appellants did not rely on an active-matrix embodiment in their '803 petition. Samsung claims Appellants' position is "plainly wrong." AB40; *see* AB35; Appx40-41. But Samsung concedes that the Board concluded that "[Appellants] had 'raise[d] an impermissible new argument' in reply," AB41; and Samsung does not dispute that Appellants' petition stated: "Matthies relates to 'tiled display devices.' *The display can employ 'active matrix circuits.*'"

Appx332 (quoting Appx3089 1:8-10, Appx3092 8:21-26) (emphasis added). Samsung also irrelevantly notes that "even [Appellants'] expert admitted" that "Figure 8B of Matthies" "discloses a passive matrix." AB35. It is immaterial that Matthies, in one figure, discloses a passive matrix, as that does not negate Appellants' express presentation in their petition about active-matrix displays.

Relatedly, Samsung contends that the "Board nevertheless proceeded to consider the argument and rejected it on its merits." AB40-41. But the Board relied on the mischaracterization of Appellants' petition as an independent basis for rejecting Appellants' argument. *See* Appx37 ("*[E]ven assuming Matthies discloses an active-matrix display embodiment*, Petitioner may not, at the time of the Reply, switch its position.") (emphasis added). Samsung, too, proclaims that its mischaracterization of the record "alone suffices to reject [Appellants'] arguments." AB35. The Court should correct this error on the way to remanding this case.

#### 2. The Board erred in its narrow understanding of the useful lifetime of Matthies' display.

The Board refused to engage with Appellants' demonstration that the proposed modification would extend Matthies' useful life because

the useful life of a display must account for how pixels age relative to each other. Samsung does not dispute that the Board refused to consider Appellants' argument. Instead, Samsung argues only that Appellants "offered a completely new theory in its reply." AB43-44. But it is Samsung that completely ignores the references in Appellants' petitions discussing differing emissive efficiencies and Yamada's discussion of color and white balance. *See* OB71-74 (collecting citations to the petitions and opening expert declarations). These include, for example, the discussion of how "different emission efficiencies make display 'color balance … difficult to achieve' by requiring further adjustments to supplied current," which "results in even further 'deterioration.'" Appx358 (quoting Appx3170 3:1-6). Rather than address this relevant record, Samsung narrow-mindedly faults the petitions for not using the words "useful lifetime." *See* AB45 ("Tellingly, [Appellants'] petitions never mention 'useful lifetime.'"). But, as Samsung admits, the substance of the argument is that the useful lifetime would increase because "the pixels 'would all age at or near the same rate'" as the petitions explained. AB44 (quoting Appx690). That concern with how pixels age relative to each other, and how that

extends the color balance, is exactly what the petitions discussed: "Further, these different emission efficiencies make display 'color balance … difficult to achieve' by requiring further adjustments to supplied current," which "results in even further 'deterioration.'" Appx358 (quoting Appx3170 3:1-6).

Samsung similarly fails to rebut the point that, at most, Appellants in reply properly responded to Samsung's argument that the "proposed combination would *reduce* the lifetime of Matthies'[s] display overall." Appx577. So "any ambiguity as to whether [Appellants] raised a new argument on reply is eliminated when we consider whether [Appellants'] reply arguments are responsive to arguments raised in [Samsung's] Patent Owner Response." *Apple Inc. v. Andrea Elecs.*, 949 F.3d at 706. Samsung is tellingly silent on this key point.

On the merits of Appellants' obviousness showing, Samsung's only response is to misread one reference and ignore the rest of Appellants' evidence. Samsung contends that Appellants "selectively quoted Arnold to assert that relative resizing of pixels 'improves the display's "useful lifetime"' by 'maximiz[ing] the time that the relative luminance of the three-color elements can be maintained.'" AB45 (quoting Appx690). To

start, that fails to address the other evidence—including the discussions in Samsung's petitions about relative pixel aging, Yamada's discussion of color and white balance based on relative pixel deterioration, and Dr. Pattison's testimony about maintaining color and white balance. *See* OB71-74. Samsung contests none of this.

Samsung's only response is that Arnold also includes the phase "minimizing the loss of absolute luminance." AB45. But Arnold describes a balance: maximizing relative aging of pixels to maintain white balance while minimizing overall loss of luminance. *See* Appx3964 1:50-2:4 (discussing the tradeoffs between these two). Samsung reads out the first half of this equation, claiming without citation that "[t]he 'useful lifetime' of the display is determined primarily by the luminance (i.e. brightness) of the display, *not* the white balance." AB46. But Arnold does not say that. Instead, Arnold states that "[i]f these relative luminance values change dramatically, images may have a serious color imbalance, and the user is likely to become dissatisfied with the display and consider the display to be at the end of its life." Appx3964 1:53-56. And even if Samsung were right that

absolute luminance is the primary indicator of useful life (it is not), Arnold makes clear that the color balance is at least still a factor.

Finally, Samsung's sur-reply provided it an opportunity—which it took—to respond to Appellants' argument. That obviated any concern with arguments raised in Appellants' reply. Samsung protests, contending that this "contravene[s] precedent," AB46, but cites no precedent. This Court has concluded when faced with accusations of new reply arguments that a party does not lack "notice and the ability to respond to any particular argument" when it "file[s] a surreply addressing" the argument. *Skky, Inc. v. MindGeek, S.A.R.L.*, 859 F.3d 1014, 1023 (Fed. Cir. 2017).

### B. The Board erred in rejecting a motivation to combine Murai and Yamada.

Appellants relied on a combination of Murai and Yamada as a separate basis for showing obviousness. The Board legally erred in demanding a showing that the combination would only produce advantages and in concluding that Murai's cutouts would not be useful for OLEDs.

#### 1. The Board erred in demanding a showing that the combination would produce only advantages.

The Board faulted Appellants for not balancing "the loss of aperture ratio when resizing Murai's pixels according to Yamada's teachings." Appx105; Appx212-213. Appellants did, however, discuss why the benefits—including improved color, simpler design, and improved display life—outweighed any disadvantages from reduced aperture ratio. But the Board demanded that Appellants show the combination produced only advantages and no disadvantages—a legally erroneous approach. *See* OB76-79.

Samsung does not contest that it is reversible error if the Board considered only the aperture ratio and no other benefits. Samsung argues, however, that the Board *did* consider these and "found as a matter of fact that *both* aperture ratio and lifetime weighed against the proposed modification." AB72. But the Board clearly focused on aperture ratio, and aperture ratio alone. The relevant section of the Board's analysis is titled: "Not Balancing for Reduced Aperture Ratio." Appx103. Every reference to other benefits is subsumed under the context of "reduced aperture ratio." The Board only discussed "improved lifetime" when dismissing that "one of ordinary skill in the

art would have determined that the alleged benefits in increased lifetime of the display outweighs the disadvantage brought about by reduced aperture ratio." Appx105-106. The Board similarly mentioned improved color only when critiquing that Appellants did not "balance the alleged benefits of Yamada's teachings with the disadvantages of reducing aperture ratio in Murai." Appx107. And for "simpler design," Samsung cites to the Board's discussion of Matthies and Yamada (not Murai and Yamada), *see* AB73 (quoting Appx41), and even then it misquotes the Board. Samsung contends that the Board found that simpler design "would not have motivated the combination because it 'hinged on [Appellants'] explanation of the base benefit' of longer display life," AB73; but the Board actually said the simplified design "hinged on [Appellants'] explanation of the base benefit, i.e., making the blue pixels larger," Appx41.

### 2. The Board erred in finding that Murai's cutouts were not useful for OLEDs.

The Board next concluded that a skilled artisan "would not have viewed Murai's cut-outs as necessary" "[i]n an OLED display." Appx109 (quoting Appx616). Appellants showed that this was misguided because (1) Murai itself specifically teaches applying its technique to OLED

displays and (2) the Board impermissibly required Appellants to show that the Murai-Yamada combination would provide one specific advantage of increased aperture ratio, while ignoring other benefits.

Samsung does not dispute that, if the Board found that Murai's cutouts were not useful for OLEDs, that was material error requiring vacatur given that Murai specifically teaches: "The color image display device according to the present invention can be applied to … organic EL display devices." Appx3152 [0058]. Samsung's only response, therefore, is to contend that the Board did not find that Murai's cutouts were not useful for OLEDs: "What the Board actually found was that [Appellants] had not shown it would have been obvious to resize the pixels." AB73. Samsung distorts reality. This section of the Board's opinion is titled "*Murai's Cutouts Not Useful for OLEDs*." Appx109. This section discusses how Appellants "ha[ve] not persuasively shown that Murai's corner cutouts would be useful in the context of OLED displays," Appx110; how Appellants failed "to establish how Murai's corner cutouts are suitable in the context of OLED displays," Appx110; and how in "an OLED display … a POSITA would not have viewed Murai's cut-outs as necessary," Appx109. Samsung states only the

Board's *conclusion* about obviousness, but that conclusion was based on the misguided proposition that a skilled artisan "would not have viewed Murai's cut-outs as necessary" "[i]n an OLED display." Appx109 (quoting Appx616). Samsung also cites expert testimony—instead of what the Board actually concluded—discussing why a skilled artisan would not have been motivated to resize the pixels by cutting off corners. AB74. But the Board only cited this testimony in support of its conclusion that Murai's cutouts were not useful for OLEDs (Appx110); and the "Board's judgment must be reviewed on the grounds upon which the Board actually relied," *In re Applied Materials, Inc.*, 692 F.3d 1289, 1294 (Fed. Cir. 2012). The grounds on which the Board actually relied directly contradict the teachings of the prior art.

## CROSS-APPEAL STATEMENT OF THE ISSUES

**I.** Whether the Board's determinations that claims 1-4 and 19-21 of the '803 patent and claims of 1, 4-10, 13, and 15 of the '683 patent are unpatentable as obvious should be affirmed, because substantial evidence supports the Board's finding that Phan renders obvious a pixel arrangement structure of an OLED display.

**II.** Whether the Board's determinations that claims 1-4 and 19-21 of the '803 patent are unpatentable as obvious should be affirmed, because substantial evidence supports the Board's finding that Phan renders obvious a "virtual square."

## CROSS-APPEAL SUMMARY OF ARGUMENT

Substantial evidence supports the Board's determinations that claims 1-4 and 19-21 of the '803 patent and claims of 1, 4-10, 13, and 15 of the '683 patent are unpatentable as obvious in view of Phan. Samsung raises two challenges on appeal. The first is directed at the preamble of independent claim 1 of both the '803 and '683 patents, from which all challenged claims directly or indirectly depend, requiring "[a] pixel arrangement structure of an organic light emitting diode (OLED) display." Appx272 8:58-59; Appx284 8:63-64. The second is directed at the "virtual square" limitation recited in independent claim 1 of the '803 patent. Appx272 8:63. Neither challenge has merit.

The Board's finding that Phan renders obvious the claimed pixel arrangement structure of an OLED display is supported by substantial evidence. Phan discloses the claimed pixel arrangement and expressly discloses OLED displays among the "display technologies" contemplated

for its “invention.” Appx3121 1:17-29. The Board thus correctly found that Phan discloses and renders obvious that the purportedly inventive pixel arrangement can be applied to an OLED display. Multiple other prior-art references further confirm that the type of pixel arrangements disclosed in Phan can be used for OLED displays. None of Samsung’s factual arguments overcome the substantial evidence supporting the Board’s findings.

The Board’s finding that the “virtual square” limitation of the ’803 patent is obvious is also supported by substantial evidence. Phan teaches pixels comprising “regularly disposed” sub-pixels at the heart of its dynamic pixels invention, and the Board properly found that Phan teaches that its pixels may be arranged in a grid pattern to form a matrix of quad pixels used in a display, with the quad pixels forming the claimed “virtual square.” Samsung rehashes factual assertions that the Board properly considered and rejected as contrary to Phan’s teachings. The Board correctly rejected Samsung’s baseless interpretation assuming purported spacing among Phan’s quad pixels. The Board noted that Samsung’s position would result in irregularly-shaped dynamic pixels contrary to the purpose of Phan’s invention of

creating sequential, regularly-shaped dynamic pixels, and noted that Samsung's argument was inconsistent with every drawing in Phan. Samsung's factual challenges on appeal fail to show a lack of substantial evidence to support the Board's determinations.

## CROSS-APPEAL ARGUMENT

### I. Substantial Evidence Supports the Board's Finding That Claims 1-4 and 19-21 of the '803 Patent and Claims 1, 4-10, 13, and 15 of the '683 Patent Are Unpatentable As Obvious.

#### A. The Board's finding that Phan renders obvious a pixel arrangement structure of an OLED display is supported by substantial evidence.

The Board correctly found that "Phan fairly suggests that the pixel arrangements disclosed in Phan—which are part of Phan's 'invention'—may be applied to OLEDs." Appx47. The Board thoroughly addressed the parties' arguments with seven pages of reasoning well-grounded in substantial evidence supporting the Board's finding. Appx44-51; Appx141-147.

Appellants showed that Phan teaches a pixel arrangement structure of an OLED display. Appellants demonstrated that Phan uses "pixel designs" and "pixel arrangements," Appx44-45 (citing Appx378; Appx696); *see* Appx141-142. Appellants further demonstrated that Phan's "teachings can be employed with various 'display

technologies,' including 'Organic Light Emitting Diode (OLED)' displays." Appx365 (quoting Appx3121 1:18-29); *see* Appx3017 ¶ 327. Specifically, Phan discloses that its invention applies to OLEDs in describing the "Field of the Invention": "'[t]he invention [of Phan] relates to a display comprising pixels and dots, including but not limited to' various 'display technologies' including 'Organic Light Emitting Diode (OLED).'" Appx47 (quoting Appx3121 1:17-29). The Board properly relied on this teaching. Appx47-48; Appx143-144; *Bradium Techs. LLC v. Iancu*, 923 F.3d 1032, 1049 (Fed. Cir. 2019) ("[A] reference must be considered not only for what it expressly teaches, but also for what it fairly suggests." (citation omitted)).

The Board properly made its findings "from the perspective of a person of ordinary skill in the art," which was defined in this case as having had "2 years of professional experience working with display design, *including OLED displays*." Appx47 (emphasis added); Appx144. Samsung does not challenge that POSITA definition on appeal. The Board found that "an ordinarily skilled artisan would have been inclined to link Phan's disclosed pixel arrangements with OLEDs based on the plain statement about related 'display technologies' in Phan's

'Field of the Invention' section" "[i]n light of this specific experience." Appx47-48; Appx144. The Board also found that a "skilled artisan would have considered Phan's pixel designs as 'an obvious starting place when implementing the rest of what Phan teaches,' including the 'displays referenced elsewhere in Phan.'" Appx48 (citing Appx3016-3017, Appx3032-3033 ¶¶ 324-327, 399-403; Appx3121 1:18-29, 2:51-53); Appx145. And the Board emphasized the obviousness standard: "We consider the application of Phan's pixel arrangements to OLED displays—which themselves are disclosed in Phan—to be among the 'inferences and creative steps that a person of ordinary skill in the art would employ.'" Appx48-49 (quoting *KSR*, 550 U.S. at 418); Appx145.

The Board also considered the disclosures in other prior art, which confirmed its reading of Phan. For example, Appellants cited, and the Board credited, another prior-art reference, the Cok reference, that explains that the same "pixel pattern" shown in Phan's Figure 11b is useful in OLEDs, both passive-matrix and active-matrix. *See* Appx50-51; Appx44-45; Appx696 (citing Appx3303-3304 2:61-67, 4:8-15 ("Referring to FIG. 1, a pixel pattern 10 in an OLED display device

according to one embodiment of the present invention”); Appx3299 (Fig. 1)); Appx141; Appx147:

| **Phan**<br><br>Fig 11b, Appx3112 | **Cok**<br><br>Fig. 1, Appx3299 |
|---|---|
| <br>FIG 11b | <br>FIG. 1 |

And Appellants cited Samsung’s expert admitting that Cok’s Figure 1 has the same sub-pixel configuration, just rotated 180 degrees, and that Cok states Figure 1 is “specific to an OLED display.” Appx3423-3425 71:19-73:18; *see* Appx3419-3422 67:8-69:8, 70:5-22 (Samsung’s expert agreed that the Cok reference disclosed a pixel pattern useful in both passive-matrix and active-matrix OLEDs). The Board credited the comparison to Cok, and found a skilled artisan would have had a reasonable expectation of success in applying Phan’s pixel arrangements to OLEDs. Appx50-51; Appx44-45; Appx147.

As the Board noted, Appellants also cited Matthies, which expressly discloses that the same pixel configuration can be used with OLED, LCD, plasma, and other types of display technology. Appx44-45 (citing Appx3091 5:28-35); Appx695-696 (citing Appx3091 5:28-35); Appx141. Finally, as the Board also noted, Appellants explained that the Chao prior-art reference, which Samsung cited, explicitly discloses that OLED displays can use the same "arrangement of the RGB [red, green, and blue] sub-pixels" from an LCD. Appx4047 [0006]; *see* Appx44-45 (citing Appx4047 [0006]); Appx696 (same); Appx141.

All of this provided substantial evidence for the Board's finding that Phan renders obvious a pixel arrangement for OLED displays.

Samsung's cross-appeal fails to show otherwise. Samsung raises a series of factual disagreements with the Board's findings, none of them undermining the substantial evidence supporting the Board's determinations.

For example, Samsung argues Phan does not disclose a pixel arrangement of an OLED display. AB74. Samsung admits that Phan references OLED displays in its list of "display technologies," but argues that this disclosure is not enough because Phan does not describe or

depict an OLED display in a figure. AB75-76. Samsung also claims the Board based its entire conclusion that it would have been obvious that Phan's pixel arrangements may be applied to OLEDs based on references to OLEDs. AB76 (citing Appx47).

Samsung reads the Board's decision too narrowly. Samsung ignores that the Board found that a skilled artisan, with two years of professional experience in display design *including OLED displays*, would, "*[i]n light of this specific experience*," be able to apply Phan's disclosed pixel arrangements to OLEDs. Appx47-48 (emphasis added). Samsung also overlooks the Board's reliance on other prior-art references to conclude that pixel arrangements like those in Phan apply to OLED displays. *Contra* AB77. As Appellants explained, "[n]umerous prior art references—including references [Samsung] itself cites—say the very same thing." Appx695. For instance, the Cok prior-art reference uses the same pixel arrangement from Phan for an OLED. *See* Appx696 (citing Appx3303-3304 2:61-67, 4:8-15); Appx3303-3304 2:61-67, 4:8-15 (the same "pixel pattern" shown in Phan's Figure 11 is useful in both "passive-matrix or active-matrix" OLEDs). And Samsung cited a reference, Chao, that uses the same type of RGB arrangements

for both OLED and LCDs. *See* Appx695-696 (citing Appx4047 [0006]); Appx4047 [0006] (OLED displays can "us[e] the arrangement of the RGB sub-pixels" from an LCD). The Board appropriately cited these additional references and credited Appellants' showing. Appx44-45; Appx50-51.

In trying to challenge the Board's reliance on Phan's reference to OLED displays, Samsung likens this case to *Otsuka Pharm. Co. v. Sandoz, Inc.*, 678 F.3d 1280 (Fed. Cir. 2012), a case it raised unsuccessfully before the Board. Appx594-595; Appx1220. In *Otsuka*, this Court rejected the argument that a skilled artisan would have selected a particular chemical compound from a "broad genus" encompassing approximately nine trillion compounds for use in antipsychotic drug discovery. 678 F.3d at 1286, 1294. It concluded that a skilled artisan would not have understood the disclosure of a "'laundry list' of potential central nervous system controlling effects" to mean that every one of the trillions of compounds encompassed by that reference's broad genus would have been "a potential antipsychotic." *Id.* at 1293-94. Samsung likens *Otsuka* to the Board's reliance on Phan's list of fifteen technologies in the Field of the Invention. AB76-77.

*Otsuka* is "inapposite," as the Board correctly observed. Appx48; Appx145. As the Board explained, though the "laundry list" of nine trillion compounds in that case was insufficient to establish obviousness, *Otsuka* does not "discredit the use of a list in a prior art patent to associate related technologies with a disclosed invention." Appx48. Here, Phan provides a concise list of technologies to which its "invention" of pixel arrangements is intended to apply, with OLED technology listed as seventh among fifteen displays. Appx3121 1:17-29. And *Otsuka* is distinguishable for another reason: the Court acknowledged in *Otsuka* that there was an "explicit[] disclos[ure]" that the particular compound at issue "produc[es] an antihistaminic effect." 678 F.3d at 1293. As such, the Court noted that this "clear teaching control[led]" over the "more nebulous disclosure" that "trillions" of compounds, of which this compound was one, could be selected for "antipsychotic drug" purposes. *Id.* at 1293-94. By contrast, there is no clear teaching in this record that OLED displays were inapposite for Phan's pixel arrangements. And indeed, the weight of the evidence indicated the opposite, as the Board correctly found.

Samsung next argues that Phan does not disclose applying its pixel arrangements to OLED displays because "different display technologies require different pixel arrangements." AB77. But nothing Samsung cites requires the inferential leap from the generic proposition that different display technologies may use different pixel arrangements to the conclusion that Phan's pixel arrangement cannot be applied to OLEDs. Samsung cites its expert's declaration about differences between LCDs and OLEDs. AB77 (citing Appx3738-3742 ¶¶39-43). But Samsung does not show that its expert's testimony establishes a categorical prohibition that Phan cannot be used with OLED displays – which would contradict Phan's express disclosure. And indeed, the testimony cited by Samsung concerns generic manufacturing differences between LCDs and OLEDs within a section titled "Principles of Operation – LCDs vs OLED Displays." Appx3735; *see, e.g.*, Appx3739 ("Unlike LCDs, OLEDs do not require a separate light source."). Nothing in that testimony negates the substantial evidence supporting the Board's finding that a skilled artisan would have understood that Phan's pixel arrangements apply to OLED displays, as Phan itself teaches.

Samsung also cites Appellants' expert testimony about his experience designing LEDs, which again fails to support Samsung's assertion that Phan does not apply to OLED displays. AB77 (citing Appx4505-4507 41:6-43:4). Samsung claims Appellants' expert admitted the pixel layers would be adjusted based on the underlying technology. AB77. But what Appellants' expert actually said was that a skilled artisan would know how to make simple adjustments to accommodate the underlying display technology. *See* Appx4506 42:5-7 (noting that a "pixel layout is a design consideration that can be adjusted based on" the underlying technology). Samsung's unpersuasive evidentiary citations fail to show that the Board's determinations lacked substantial evidence.

Samsung raises several other ancillary factual points, all without merit. For instance, Samsung notes both sides agreed that two of the technologies appearing at the very end of the list of display technologies in Phan "do not appear to exist." AB76 (citations omitted). But that agreement did not extend to OLEDs—and Samsung does not (and cannot) dispute that OLEDs were well-known at the time of Phan. Samsung's own expert confirmed that OLEDs were known in the prior

art and described as "conventional" in the Chao prior art reference. Appx3370-3371 18:2-19:8; Appx3415-3418 63:5-66:2; Appx4047 [0006].

Samsung also claims Appellants admitted that Phan is not directed to pixel arrangements. AB78 (citing OB11 (describing each dot controlled individually)). Not only is this a new argument on appeal, it lacks any merit. Before the Board, Samsung only disputed that Phan taught that its pixel arrangements applied to OLEDs, and not whether Phan is directed to pixel arrangements in the first instance. Appx454-455; Appx593-596; Appx738-740. To the contrary, Samsung repeatedly acknowledged that Phan discloses a "pixel arrangement structure," and merely disagreed whether they could be used in OLEDs. *E.g.*, Appx593 (discussing Phan's "pixel arrangement structure"); Appx739 (discussing "Phan's pixel arrangements"). Samsung has therefore forfeited any argument that Phan is not directed to pixel arrangements. *See Schwendimann v. Neenah, Inc.*, 82 F.4th 1371, 1383-84 (Fed. Cir. 2023).

Regardless, Appellants did not admit in their opening brief that "Phan is not directed to pixel arrangements." *Contra* AB78. Appellants merely described "Phan's innovation [as] circuitry that allows each dot to be controlled individually." OB11. Nor could Appellants have made

such an admission, since that would be contrary to the clear disclosure of Phan, which teaches pixel arrangements. Even if Phan discloses a particular kind of control circuitry that Samsung claims is different from an OLED display, Samsung is wrong to suggest that Phan's pixel arrangements cannot be applied to OLEDs. After all, a prior art reference "is not limited to the particular *invention* it is describing and attempting to protect," but must instead be "considered for everything that it *teaches*." *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1076 (Fed. Cir. 2015) (citation omitted). And Phan teaches that its pixel arrangements apply to the various "display technologies" listed, including OLEDs. Appx47. Samsung provides no basis for requiring that Phan's disclosure of the pixel configuration must be "dependent on" any particular control circuitry. *Belden*, 805 F.3d at 1076.

Samsung next argues that Phan states that "the pixel arrangement is not important to its invention." AB78. Samsung relies on Figures 3a-d, where Phan teaches the particular arrangement of red, green, and blue does not matter. AB78 (quoting Appx3122 4:36-38). But the same is not true of Figures 11a and 11b, on which Appellants relied and the Board rested its findings. In Figures 11a and 11b, Phan

is specific about the pixel arrangement: Phan directs a "square" shape of the quad pixel, a "crosspoint" located at the "center of the four dots," and an "equal light emitting area and space" in Figure 11a, Appx3123 5:47-50, and the resultant two green dots "of equal light emitting area" in Figure 11b, Appx3123 5:51-54. Samsung's citations do not support its assertion.

Samsung's next set of arguments concern the motivation to modify Phan. These arguments fail, however, because they mischaracterize the Board's findings and assume that Phan must be modified in ways that it need not be. To begin, Samsung claims the Board combined Figures 11b and 12 of Phan, and "modif[ied]" Phan to create an OLED display. AB81; *see* AB79-86. But Samsung's argument is based on a misleading quotation of the Board's findings. The Board summarized the parties' dispute and concluded that Phan *teaches* applying its pixel arrangements to OLED displays. *Compare* AB81 ("Instead, the Board merely concluded that Phan's 'pixel arrangements *can be applied* to OLED displays'" (quoting Appx47 (emphasis added))), *with* Appx47 ("Given this background, we note that the parties' disputes regarding Phan turn on whether Phan *teaches that* its disclosed pixel

arrangements can be applied to OLED displays. *We find that it does*.") (emphasis added). The Board did not merely find that Phan's arrangement "can be" applied to OLEDs—the Board properly found that Phan teaches such an application.

Further persisting in mischaracterizing the Board's findings, Samsung argues the Board failed to identify a motivation to modify Phan to create an OLED display. AB82-83. But Samsung cites the same testimony as its earlier argument that Phan's pixel arrangement cannot be applied to OLED displays. *Compare* AB82 (citing Appx3738-3742; Appx4505-4507), *with* AB77 (citing same). Again, such testimony was directed to generic manufacturing differences between LCDs and OLEDs and does not show the Board's determinations lacked substantial evidence.

Notably, Samsung does not, and cannot, argue that the Board committed any legal error in applying the obviousness standard. The Board properly identified teachings in Phan, other references, and the background knowledge of a skilled artisan in making its obviousness finding. *See PGS Geophysical AS v. Iancu*, 891 F.3d 1354, 1365 (Fed. Cir. 2018) ("[T]he motivation to modify a reference can come from the

knowledge of those skilled in the art, from the prior art reference itself, or from the nature of the problem to be solved.”). Samsung’s challenge consists entirely of factual disagreements with the Board’s findings, which are well-supported by substantial evidence. Not only does Phan itself teach that its pixel arrangements apply to OLEDs, Appx47-48 (citing Appx3121 1:17-29), Appx143-145, but other references also show that the pixel arrangements in Phan can be used in OLEDs, Appx44-45 (citing Appx4047 [0006]); Appx696 (citing Appx3303-3304 2:61-67, 4:8-15). And as the Board found, a skilled artisan, who by definition has two years of OLED display design, would know how to implement Phan’s pixel arrangements in OLEDs. Appx47-48; Appx143-145.

Samsung wrongly asserts the Board relied “entirely” on the knowledge of a skilled artisan to supply the disclosures for motivation to modify Phan to make an OLED display. AB84-85. Phan explicitly discloses OLEDs in its “Field of the Invention” section, Appx3121 1:17-29, so OLED technology is not a limitation missing from the prior art—it is expressly disclosed in Phan. That disclosure distinguishes this case from those Samsung invokes. AB85 (quoting *DSS Tech.*, 885 F.3d at 1375, and citing *Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355, 1362

(Fed. Cir. 2016)). *Arendi* disapproves of relying on common sense "to supply a limitation that was admittedly *missing* from the prior art" in a technologically complex case. 832 F.3d at 1362. *Arendi* does not prohibit reliance on common sense where, as here, the prior art *discloses* the limitation as known technology. And unlike *DSS*, the Board did not rely on "common sense" or "ordinary creativity" as a "gap-filler" to "supply a missing claim limitation," 885 F.3d at 1374, because the OLED limitation is expressly disclosed in Phan. *See also Merck Sharp & Dohme Corp. v. Hospira, Inc.*, 874 F.3d 724, 728-30 (Fed. Cir. 2017) (rejecting patentee's argument that common sense was used as a gap-filler because it was reasonable to "deduce from the evidence" that the claimed limitation, "if not already known, would have been discovered ... while implementing known principles").

Samsung's final set of arguments challenges the Board's finding that a skilled artisan would have had a reasonable expectation of success in "modifying" Phan to arrive at the claimed OLED display. AB83-84; AB85. This challenge fails for several reasons, and the Board's finding was amply supported by substantial evidence. The Board properly credited Appellants' relevant expert testimony as "more

persuasive" than Samsung's expert testimony, observed that the '803 and '683 patents acknowledge that OLED componentry "was known in the art," and relied on the Cok reference with "the same pixel arrangement as Phan" teaching "that it is for 'an OLED display device.'" *See* Appx50-51; Appx147.

Phan itself teaches that its pixel arrangements can be applied to an OLED display, as explained previously. Samsung claims Appellants' expert "offered no opinion on the separate question of whether there is an expectation of success in further modifying the combination to use OLEDs," AB85, but that assertion is incorrect. Appellants' expert opined on how a skilled artisan would be "motivate[d] to use … those example pixels … with the displays referenced elsewhere in Phan." Appx3033 ¶¶ 402-403. A skilled artisan would not be "motivated" to use this technology with no reasonable expectation of success. And the Board properly credited this testimony. Appx44 (citing Appx3032-3033 ¶¶ 401-403; Appx3016-3017 ¶¶ 324-327); *see* Appx51 (citing Appx3017-3018 ¶¶ 328-338 (also opining on application to OLED displays)).

The Board also properly relied on Cok, which "discloses the same pixel arrangement as Phan" and states that the arrangement is for "an

OLED display device," as "consistent with" a reasonable expectation of success. Appx50-51 (citing Appx3112 (Phan Fig. 11b) and Appx3299 (Cok Fig. 1); quoting Appx3304 4:8-13). Samsung disagrees with the Board's finding on Cok and claims that the similarities between Cok and Phan are "superficial." AB86 (citing Appx50-51). Yet Samsung offers only bare attorney argument in support, identifies no evidence the Board failed to consider, does not engage with the evidence the Board relied on, and does not articulate any error in the Board's consideration of this substantial evidence.

Samsung claims that Phan does not disclose how to modify Figures 11 or 12 to account for the "unique challenges" associated with OLED pixels. AB84. But Samsung fails to name a single "unique challenge[]," much less tie any purported challenges to any error in the Board's finding that Phan renders obvious the challenged claims. Samsung asserts its expert said it "would not be feasible" to "convert" Phan to an OLED display, AB84, but the Board considered and rejected that testimony as unpersuasive, Appx46-49 (Board citing and rejecting Samsung's expert testimony in multiple respects); Appx145-147. Among other things, the Board found this testimony inconsistent with

the fact that "Phan expressly associates OLED displays with its … arrangement of pixels." Appx48; Appx145. And the Board "consider[ed] the application of Phan's pixel arrangements to OLED displays—which themselves are disclosed in Phan—to be among the 'inferences and creative steps that a person of ordinary skill in the art would employ.'" Appx48-49 (quoting *KSR*, 550 U.S. at 418); Appx145.

Samsung also cites cases on prior art enablement, which are inapposite. AB83. At the outset, to the extent Samsung is now attempting to argue on appeal that Phan does not provide an enabling disclosure of use of OLED displays (separate from Samsung's argument about reasonable expectation of success), any such enablement argument is forfeited as Samsung never presented that argument to the Board. *Schwendimann*, 82 F.4th at 1383-84. In any event, Phan is an issued patent and thus entitled to a presumption of enablement with respect to its disclosures, including its disclosure of use of OLED displays. *See, e.g.*, *In re Antor Media Corp.*, 689 F.3d 1282, 1287-88 (Fed. Cir. 2012) (citing *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1354 (Fed. Cir. 2003)).

And even if Samsung had preserved an issue of whether Phan provides an enabling disclosure, this Court's precedents on enablement make clear that "[a] patent need not teach, and preferably omits, what is well known in the art." *Falko-Gunter Falkner v. Inglis*, 448 F.3d 1357, 1365 (Fed. Cir. 2006) (quoting *Spectra–Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1534 (Fed. Cir. 1987)).

Indeed, the '803 and '683 patents also omit OLED manufacturing details precisely because they were known in the art. *See, e.g.*, Appx269 1:46-50; Appx270 3:66-4:1.

This case bears no resemblance to *Raytheon*, which did not involve prior art patents with a presumption of enablement, in which "unrebutted evidence" established that the prior art's "futuristic turbine engine" required the "use of nonexistent composite materials" that were non-enabled. *Raytheon Techs. Corp. v. Gen. Elec. Co.*, 993 F.3d 1374, 1377 (Fed. Cir. 2021). Here, "the overall evidence of what was known" about OLED displays was sufficient. *Id.* at 1376-77.

And even if Samsung had a colorable (and properly preserved) argument that Phan does not provide an enabling disclosure of OLED display technology, *Raytheon* makes clear that enablement is assessed

based on “the prior art, taken as a whole,” such that “a reference that does not provide an enabling disclosure for a particular claim limitation may nonetheless furnish the motivation to combine, and be combined with, another reference in which that limitation is enabled.” 993 F.3d at 1380. In this case, as observed above, the Board also cited to Cok explaining that it “discloses the same pixel arrangement as Phan... and states that it is for ‘an OLED display device’” which the Board found was “consistent with Petitioner’s assertions of expected success.” Appx50-51 (internal citations omitted). Samsung does not claim that Cok fails to provide an enabling disclosure of use of OLED displays.

And the nonprecedential *Creative Kingdoms* decision cited by Samsung did not involve prior art; there, the patent’s asserted claims were non-enabled because “a novel aspect of [the] claims was the combination of sensors” encompassing “both mechanical and electronic sensors,” but the specification did not enable implementation of the full scope. *Creative Kingdoms, LLC v. Int’l Trade Comm’n*, 588 F.App’x 993, 994-95 (Fed. Cir. 2014). Here, the challenged patents and prior art references all concurred that OLED implementation details were known in the art.

The Board's findings regarding obviousness in view of Phan are supported by substantial evidence, and its determinations that claims 1-4 and 9-21 of the '803 patent and claims 1, 4-10, 13, and 15 of the '683 patent are unpatentable as obvious should be affirmed.

### B. The Board's finding that Phan renders obvious the claimed "virtual square" is supported by substantial evidence.

The Board's finding that the "virtual square" limitation of the '803 patent is obvious is also supported by substantial evidence. Appx51-61; *contra* AB86-95.

The Board began by noting Appellants' showing that Phan's "[p]ixels," which make up its display, "comprise regularly disposed dots 11 radiating the basic colours red (red dot 13), green (green dot 14) and blue (blue dot 15)." Appx51-52; *see* Appx367 (citing Appx3122 4:29-32); OB10-11. Appellants explained that, according to Phan, "the arrangement of the different dots 13, 14, and 15 should be identical in each static pixel 17 within a display 10." Appx367 (quoting Appx3122 4:38-40). The Board also noted Appellants' showing that Phan indicates that the pixels may be "square" and arranged in "a well known grid

pattern." Appx367 (quoting Appx3122 4:41-43); *see* Appx52; Appx3019-3020.

Putting those teachings together, the Board credited Appellants' showing that Figure 2a was an example of a "display with square pixels," such as the square pixels shown in Figure 1a with individual dots (red dot 13, green dot 14, and blue dot 15). Appx52 (citing Appx367; Appx3122 3:33-36). The Board further acknowledged Appellants' explanation of how Figure 2a incorporated square pixels such as the one shown in Figure 1a. Appx52 (citing Appx368). Appellants demonstrated that Figure 2a had "well-known static pixels being shown within squares, and the dynamic pixels of the invention within circles," as depicted below, Appx367 (quoting Appx3122 3:33-36; 4:41-47):



FIG.2a

Appx367.

Appellants explained how Phan discloses different ways of structuring individual pixels and colored dots within pixels. According to Phan, "FIG. 11a shows a square quad pixel where the crosspoint 33 is in the center of the four dots (individual elements) of equal light emitting area and space, contoured by black mask or black barrier ribs 21 with the same structure." Appx367-368 (quoting Appx3123 5:47-50).

Appellants explained that Figure 11a was an example of the "square quad pixel" depicted in Figure 1a. Appx367-368:




FIG.1a




FIG. 11a

*Compare* Appx3106 (Fig. 1a), *with* Appx3112 (Fig. 11a).

Appellants then noted that Figure 11b is a variation of Figure 11a, with Phan disclosing moving the cross point 33 along a diagonal line 35 to form two green dots of "equal light emitting area," Appx367-368 (citing Appx3123 5:47-54):




FIG. 11a




FIG 11b

Appx368.

Appellants then showed, and the Board agreed, that this "quad pixel" is intended for use in, for instance, the "quad pixel display" of Figure 12. Appx52; *see* Appx368 (citing Appx3123 5:47-60; Appx3113 Fig. 12). Appellants illustrated this with annotated versions of Phan's Figures 11b and 12:




Appx52; *see* Appx368; Appx3020-3021.

In taking Phan's teachings about how its Figure 11b could be used in the quad pixel display of Figure 12, Appellants illustrated how Phan discloses the "virtual square" with an annotated close-up of Figure 12:




Appx53 (citing Appx369).

The Board credited Appellants' showing that, "[d]ue to the use of a square pixel shape that is regularly arranged in an identically repeating matrix, Phan's dots form a 'virtual square' with a green dot at its 'center.'" Appx53 (quoting Appx369; citing Appx3019-3023 ¶¶ 339-356). The Board determined that the '803 patent's claimed limitation of a "virtual square" was unpatentable as obvious. Appx53-61.

Samsung's arguments fail to overcome that finding, which was based on substantial evidence. Notably, Samsung does not contend that the Board legally erred. Samsung merely rehashes a number of factual arguments the Board considered and properly rejected. Samsung disagrees the Board's factual interpretation of Phan, but the Board's finding is supported by substantial evidence.

Samsung begins by claiming "Phan's Figure 12 shows there are spaces … between the quad pixels," and that Appellants "improperly removed these spaces." AB88-89; *see also* AB92-94. Samsung offers its own annotations of the purported spaces (annotated in yellow), and argues that these spaces mean that Phan's Figure 11b must be incorporated into Figure 12 with spacing between them, yielding an irregular quadrilateral (annotated in red):







AB89. Based on Samsung's interpretation of Figure 12, it asserts that the Board's interpretation of how its Figure 11b configuration would be used in the display of Figure 12 would supposedly "entirely eliminate an element from a figure" and make a "fundamental, *qualitative* change." AB91.

But the Board considered and rejected Samsung's "counterexample" based on Samsung's interpretation of Figure 12. Appx57. The Board explained that Samsung's argument contradicted Phan's teaching that its "pixels are 'regularly disposed' in a repeating 'grid' or 'matrix'" pattern, not irregularly spaced as Samsung posits. Appx57-58. The Board properly rejected Samsung's unsupported, rigidly literal interpretation of Figure 12: "we do not interpret Phan's teachings as being limited by the spacing depicted in Figure 12." Appx59. Indeed, Samsung admitted "Phan does not describe its figures as drawn to scale." Appx59 (quoting Appx741-742). The Board also found that "Phan does not disclose any need for 'spacing[] between each quad-pixel … to prevent distortion and poor image quality,' as is suggested by [Samsung]." Appx60 (quoting Appx599). Instead, the Board found that Phan's dots are "evenly spaced," as "supported by every drawing figure in Phan, which shows even spacing for both static and dynamic pixels" and Appellants' expert testimony. Appx60-61 (citing Appx3106-3115 Figs. 2a-b, 4a-b, 5, 7, 8-8.12, 9-9.8, 12a-12d; Appx3340-3341 ¶¶ 73-79). Based on all this evidence, the Board properly found that the Figure 11b disclosure as obviously applied to

the display of Figure 12 renders obvious the "virtual square." Appx57-61. The Board's factual finding is amply supported by substantial evidence.

On appeal, Samsung identifies no deficiency in the Board's well-supported factfinding. It cites no evidence purportedly supporting its challenge that the Board failed to consider. Samsung merely cites its own response brief, *see* AB89-90 (citing Appx597), which, in turn, relied on a conclusory assertion by its expert that Phan has spacing between adjacent quad-pixels, *see* Appx597-598 (citing Appx3829-3832 ¶¶ 216-221). But Phan itself does not disclose irregular spacing between adjacent quad-pixels, nor does Phan require that control circuitry or optical fiber network must be placed in spacings between adjacent quad pixels. Appx3123 5:20-24.

Instead, Samsung's argument is based on a misreading of Phan, as Appellants demonstrated and the Board properly found. All of Phan's figures show that the dots or sub-pixels are "regularly spaced in a consistent, repeating pattern." Appx696 (citing Appx3106, Appx3108, Appx3111-3115 Figs 2a, 2b, 7, 9, 9.1-9.8, 12-12d). That regular spacing of the dots allows for the dynamic pixels of Phan's invention, "wherein a

one-pixel logical unit is formed by grouping adjacent dots, with adjacent pixels being physically superimposed and the dynamic pixels being generated by sequential addressing at a rate such that said generation is not perceivable by the human eye." Appx42 (quoting Appx3121 2:66-3:4); *see* OB11-12. Take, for instance, Phan's Figures 2a and 7:



FIG.2a



FIG. 7

Appx3106 (Fig. 2a); Appx3108 (Fig. 7); *see also* Appx368; Appx3116-3119 Figs. 13aa-dd (depicting the arrangement of R, G, and B pixels in Phan's "[i]nvented display").

These figures illustrate how Phan teaches regularly sized and shaped dynamic pixels, which enable the formation of sequential dynamic pixels. Appx58 (citing Appx697-698); Appx3339 ¶ 68; Appx3121 2:51-53. But under Samsung's discredited misinterpretation, Phan's display would have "differently and irregularly sized and shaped

dynamically pixels," thwarting Phan's invention, as Appellants demonstrated with the following annotated illustration:




FIG. 12

Appx698; Appx3337-3343 ¶¶ 60-87.

Because "every drawing figure in Phan[] … shows even spacing for both static and dynamic pixels," Appx60 (citations omitted), Samsung's interpretation directly contradicts Phan's teachings. The Board thus properly relied on substantial evidence to reject Samsung's argument that applying Figure 11b to Figure 12 would result in irregular quadrilaterals. Appx57-61.

Samsung next disputes the Board's reliance on *Hockerson-Halberstadt, Inc. v. Avia Group International, Inc.*, 222 F.3d 951 (Fed. Cir. 2000). AB90-91. The Board correctly found that "Phan does not describe its figures as drawn to scale" and noted the Board generally

does not "rely on patent drawings for showing particular sizes." Appx50 (citing *Hockerson-Halberstadt*, 222 F.3d at 956). Samsung now criticizes the Board's "reliance on *Hockerson-Halberstadt*." AB90-91. But Samsung itself invoked this case to argue that "Phan does not describe its figures as drawn to scale." Appx49-50 (citing Appx741-742). Samsung cannot now complain that the Board relied on *Hockerson-Halberstadt* for that very proposition. *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1373 (Fed. Cir. 2017) ("A party may not complain on appeal of errors that he himself invited or provoked the court to commit." (quoting *United States v. Wells*, 519 U.S. 482, 488 (1997)) (alterations adopted)).

Samsung makes additional factual assertions about purported "spaces between pixels." AB92-93. But Samsung mischaracterizes the Board's findings and misinterprets Phan in a way that would prevent the formation of regularly shaped dynamic pixels at the heart of Phan's invention. *See* Appx3337-3343 ¶¶ 60-87. Samsung argues that Phan's disclosure of "even spacing" does not mean Phan has "no spacing" between pixels. AB93-95. But this mischaracterizes the Board's finding. The Board did not find that a skilled artisan would modify

Phan so there would be "*no* space" between Phan's pixels; the Board merely weighed the factual evidence and was "more persuaded by Petitioner's position," and that Phan's dots are "*evenly* spaced." Appx60 (emphasis added). Moreover, the Board properly evaluated the inconsistent positions Samsung urged, where Samsung argued both that Phan depicted "essentially no spacing between adjacent dots," Appx46 (quoting Appx596), and, "contrariwise," that a skilled artisan would not rely on spacing depicted in Phan's figures because "Phan does not describe its figures as drawn to scale," Appx49-50 (quoting Appx596). Faced with Samsung's contradictory assertions, the Board properly applied a well-supported interpretation applying Phan's Figure 11b embodiment to the display of Figure 12.

Samsung also argues that the Board's finding that Phan's pixels are "'regularly disposed' in a repeating 'grid' or 'matrix'" misreads Phan. AB91 (quoting Appx58). Yet in its sur-reply, Samsung conceded that Phan teaches that its pixels are made of "*regularly disposed* dots" and only disputed whether this meant Phan's "*overall display* comprises regularly disposed, equally spaced dots." Appx740-741 (emphasis altered). Because Samsung failed to raise the argument that Phan's

*pixels* are not regularly disposed, Samsung has forfeited it on appeal. *Schwendimann*, 82 F.4th at 1383-84. And the argument is meritless: the fact that regularly disposed *dots* make up the pixels supports the Board's finding that Phan's overall display comprises regularly disposed *pixels*. The Board properly found that Phan's pixels are regularly disposed in a repeating grid, since "the figures in Phan—including Figure 12—depict pixels having the same shape and geometry across the display." Appx59-60.

Samsung also contends Phan does not disclose its pixels are "regularly disposed," because Phan purportedly uses the word "pixel" differently than the '803 patent does. AB91-92. Namely, Samsung says Phan's "pixel" is a grouping of "dots" and that "dots" correspond to Samsung's patent's "pixels." AB91-92. But Samsung does not demonstrate that this distinction makes a difference. After all, Samsung's sur-reply acknowledged that—either way—Phan teaches "regularly disposed dots," which are the "pixels" in the terminology of Samsung's patent. Appx740-741. Even if there were some merit to Samsung's assertion that Phan does not explicitly state that its pixels are themselves regularly disposed, again, the Board made a reasonable

factual inference from Phan's teachings that its dots are regularly disposed. Phan's dots are regularly disposed in relation to each other, so that they can form different groupings of dots, resulting in regularly disposed pixels. Appx59-60; *see* Appx3337-3343 ¶¶ 60-87.

The Board's determination that Phan renders obvious the "virtual square" limitation of the '803 patent is supported by substantial evidence, and its determinations that claims 1-4 and 9-21 of the '803 patent are unpatentable as obvious should be affirmed.

## CONCLUSION

The Court should vacate and remand the Board's determinations as to claim 5 of the '803 patent, claim 2 of the '683 patent, and all challenged claims of the '578 patent, and affirm the Board's determinations that claims 1-4 and 9-21 of the '803 patent and claims 1, 4-10, 13, and 15 of the '683 patent are unpatentable as obvious.

February 9, 2026

Respectfully submitted,

By: */s/ Stephen R. Smith*

Stephen R. Smith
Ephraim McDowell
Elias S. Kim
Cooley LLP
1299 Pennsylvania Avenue
NW, Suite 700
Washington, DC 20004-2400
+1 202 842 7800 (telephone)
+1 202 842 7899 (facsimile)

Mark R. Weinstein
Lowell D. Mead
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304
+1 650 843 5000 (telephone)
+1 650 849 7400 (facsimile)

*Counsel for Appellants Wuhan China Star Optoelectronics Semiconductor Display Technology Co., Ltd.; Tianma Microelectronics Co. Ltd.; and Visionox Technology, Inc.*

## CERTIFICATE OF COMPLIANCE

The brief complies with the type-volume limitation of Fed. Cir. R. 28.1(b) because this brief contains 13,907 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Century Schoolbook 14-point font.

By: *<u>/s/ Stephen R. Smith</u>*
Stephen R. Smith