Nos. 25-1517, 25-1518, 25-1519, 25-1520, 25-1521

# United States Court of Appeals for the Federal Circuit

WUHAN CHINA STAR OPTOELECTRONICS SEMICONDUCTOR DISPLAY TECHNOLOGY CO., LTD., TIANMA MICROELECTRONICS CO. LTD., VISIONOX TECHNOLOGY, INC.,

Appellants

v.

SAMSUNG DISPLAY CO., LTD.,
Cross-Appellant

On Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board, in Nos. IPR2023-00987, IPR2023-00988, IPR2023-01075

**CROSS-APPELLANT'S REPLY BRIEF**

Jeffrey H. Lerner
Scott C. Weidenfeller
Richard L. Rainey
Matthew Kudzin
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St NW
Washington, DC 20001
(202) 662-6000

April 1, 2026

*Counsel for Cross-Appellant*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 25-1517, 25-1518, 25-1519, 25-1520, 25-1521

**Short Case Caption** Wuhan China Star Optoelectronics Semiconductor Display Technology Co., Ltd. v. Samsung Display Co., Ltd.

**Filing Party/Entity** Samsung Display Co., Ltd.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 04/01/2026

Signature: /s/ Jeffrey H. Lerner

Name: Jeffrey H. Lerner

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Samsung Display Co., Ltd. | None | Samsung Electronics Co., Ltd. |
| | | Samsung SDI Co., Ltd. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Covington & Burling LLP | Daniel W. Cho | Kee Young Lee |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## TABLE OF CONTENTS

Table of Authorities ........ vi

Table of Abbreviations ........ vii

Introduction ........ 1

Argument ........ 4

I. The Board erred in finding that Phan renders obvious a pixel arrangement structure of an OLED display as required by each claim of the ’803 and ’683 patents. ........ 5

  A. Appellants fail to identify evidence that Phan teaches a pixel arrangement structure for OLED displays. ........ 5

  B. Appellants fail to identify evidence of any motivation to modify Phan’s disclosure to create a pixel arrangement structure for an OLED display. ........ 14

  C. Appellants identify no evidence that a POSITA would have had a reasonable expectation of success in modifying Phan’s disclosure to create a pixel arrangement structure for an OLED display. ........ 23

II. The Board erred in finding that Phan renders obvious the “virtual square” required by each claim of the ’803 patent. ........ 28

Conclusion ........ 35

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*,
501 F.3d 1274 (Fed. Cir. 2007). .......... 10

*Belden Inc. v. Berk-Tek LLC*,
805 F.3d 1064 (Fed. Cir. 2015) .......... 21, 33

*Creative Kingdoms, LLC v. Int'l Trade Comm'n*,
588 F. App'x 993 (Fed. Cir. 2014) .......... 26

*D Three Enterprises, LLC v. SunModo Corp.*,
890 F.3d 1042 (Fed. Cir. 2018) .......... 9, 10

*Eli Lilly and Co. v. Teva Pharms. Int'l GmbH*,
8 F.4th 1331 (Fed. Cir. 2021) .......... 25

*Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*,
222 F.3d 951 (Fed. Cir. 2000) .......... 32

*Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.*,
821 F.3d 1359 (Fed. Cir. 2016) .......... 24

*Otsuka Pharm. Co. v. Sandoz, Inc.*,
678 F.3d 1280 (Fed. Cir. 2012) .......... 10, 11

*Raytheon Techs. Corp. v. General Electric Co.*,
993 F.3d 1374 (Fed. Cir. 2021) .......... 26

*In re Rouffet*,
149 F.3d 1350 (Fed. Cir. 1998) .......... 15, 19

*TQ Delta, LLC v. CISCO Sys., Inc.*,
942 F.3d 1352 (Fed. Cir. 2019) .......... 24, 33, 34

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| ’683 patent | U.S. Patent No. 10,854,683 |
| ’803 patent | U.S. Patent No. 9,818,803 |
| Appellants | Appellants Wuhan China Star Optoelectronics Semiconductor Display Technology Co., Ltd., Tianma Microelectronics Co. Ltd., and Visionox Technology, Inc. |
| Br. | Corrected Cross-Appellant’s Principal and Response Brief |
| OB | Opening Brief of Appellants Mianyang BOE Optoelectronics Technology Co., Ltd.; Wuhan China Star Optoelectronics Semiconductor Display Technology Co., Ltd.; Tianma Microelectronics Co. Ltd.; and Visionox Technology, Inc. |
| Resp. | Response and Reply Brief of Appellants Wuhan China Star Optoelectronics Semiconductor Display Technology Co., Ltd.; Tianma Microelectronics Co. Ltd.; and Visionox Technology, Inc. |
| SDC | Cross-Appellant Samsung Display Co., Ltd. |

## INTRODUCTION

The challenged claims are directed to pixel arrangement structures for OLED displays that overcame challenging technical problems specific to OLEDs, including difficulties manufacturing OLEDs reliably. *See, e.g.*, Appx269, 1:38–45, 1:54–62; Appx271, 5:16–26, 5:32–45; 6:36–42; Appx3739-3743, ¶¶ 40–46. The inventions allowed for the first introduction of high-definition OLED displays in smartphones. Appx3905-3907, ¶ 337; Appx3915-3916, ¶¶ 348–349.

By contrast, Appellants do not dispute that the sole reference to OLED technology in Phan is in a background sentence that attempts to list all possible display technologies—including "any light sources known or invented in the future." Appx3121, 1:27–28. It is undisputed that Phan's list includes "technologies" that did not—and do not—exist, such as "phototronics" and "biotronics." *Id.*, 1:27. Nor do Appellants dispute that there is no embodiment or example in Phan that discloses an OLED pixel, much less an OLED display. Indeed, Phan offers no more disclosure about OLEDs, or pixel arrangement structures for OLEDs, than it does for the admittedly nonexistent "phototronics" and "biotronics" displays.

Appellants asserted single-reference obviousness based on Phan, yet cannot point to any disclosure of—or even reference to—OLED technology in Phan beyond its mere listing of "OLED" in the middle of the single sentence in its background setting forth its unbounded list of display technologies. The Board's finding of single-reference obviousness based on Phan lacks substantial evidence, as Appellants' brief confirms.

First, the Board erred in treating Phan's exceptionally overbroad and generic listing of all known and future display technologies as a teaching that a particular pixel arrangement shown in two specific figures could or should be used as part of an OLED display. In fact, SDC's expert made an unrebutted showing that a POSITA would recognize that to make a display consistent with Phan's teachings, it could not be an OLED display. Appellants ignore both the expansiveness of Phan's language in listing all possible display technologies and the technical challenges that would be encountered in attempting to apply Phan to an OLED display.

Second, like the Board, Appellants identify no motivation to modify Phan to try to create an OLED structure, let alone to modify specifically Phan's Figures 11b and 12 as opposed to any of Phan's other disclosed

pixel arrangements. Appellants ignore unrebutted evidence that Phan's method for driving its "dynamic" pixels and its display structure are incompatible with implementing its Figures 11b and 12 with OLEDs. Appellants and the Board instead rely on hindsight and a generalized appeal to the skill of a POSITA—precisely the type of impermissible reasoning this Court has rejected and that cannot provide substantial evidence to support the Board's finding.

Third, the Board's obviousness determination should be reversed for the independent reason that there is no substantial evidence to support a finding of a reasonable expectation of success in attempting to modify Phan's Figures 11b and 12 to create an OLED pixel arrangement structure. Appellants effectively concede the lack of evidence of a reasonable expectation of success, as they identify none. Appellants further ignore the extensive evidence establishing that a POSITA would not expect to be able to implement Phan's Figure 11b and 12 with OLED pixels given the features and requirements of Phan's displays.

Finally, as to the '803 patent, Phan does not teach, disclose, or even suggest the "virtual square" limitation. The inventor of the '803 patent devised the "virtual square" arrangement to overcome problems specific

to the manufacture of OLED pixels for OLED displays. Phan neither discloses a virtual square nor any reason to create one. Phan likewise provides no guidance on forming a virtual square, and the Board failed to identify any motivation for a POSITA to do so. Appellants' arguments rely entirely on attorney-created figures that are inconsistent with Phan's teachings and contravene Phan's explicit showing of spaces between its quad-pixels (an arrangement that cannot yield a virtual square). The absence of any reference in Phan to a virtual square, or a reason to construct one, underscores that the Board's decision as to these claims, and Appellants' obviousness theory, rest entirely on hindsight and impermissible reconstruction of the invention.

## ARGUMENT

The Board's conclusion that claims 1–4 and 19–21 of the '803 patent and claims 1, 4–10, 13, and 15 of the '683 patent would have been obvious over Phan lacks substantial evidence and should be reversed. Phan does not teach an OLED pixel arrangement, provides no motivation to modify its dynamic-pixel driving system to create one, and offers no basis for a reasonable expectation of success. Each failure is independently

dispositive; together, they confirm that the Board's decision rests on hindsight.

## I. The Board erred in finding that Phan renders obvious a pixel arrangement structure of an OLED display as required by each claim of the '803 and '683 patents.

### A. Appellants fail to identify evidence that Phan teaches a pixel arrangement structure for OLED displays.

The Board erred in elevating boilerplate language that Phan included in one background sentence into a purported teaching regarding the highly technical question of which pixel arrangements would be obvious for a particular type of display. Appellants fail to identify any substantial evidence for the Board's finding that Phan's unbounded list of display technologies, which merely includes a reference to "OLED" alongside nonexistent "technologies" and the catchall of any known light source, rendered it obvious to modify specifically Phan's Figure 11b and 12 to create an OLED display that would satisfy the challenged claims. Indeed, Appellants' expert admitted that "there's nothing in the description of any figure of Phan that says it's describing or purporting to describe OLED pixel arrangements." Appx5052, 300:16–21.

Appellants now attempt to recast Phan as providing a "concise list of technologies," or "fifteen technologies." Resp. 51–52. It does not.

Appellants fail to acknowledge that Phan's list expressly includes "any light sources known or invented in the future"—an unbounded and potentially infinite number of technologies. Appx3121, 1:27–28. It is difficult to conceive of a broader list than Phan's. And Phan provides no information about these other included "technologies" except that they contain "light sources."

Further, Appellants disregard that numerous of the specific "technologies" listed by Phan do not exist. Appx3759, ¶ 78, Appx3820-3821, ¶ 202; Appx4624, 160:11–21; Appx5044-5045, 292:15–293:13. Dr. Pattison, whom Appellants offered as "a person of more than the ordinary level of skill in the art" as of the time of the invention, Appx2960-2961, ¶ 40, testified, for example, that he was not aware of "phototronics" or "biotronics," was not "aware of any phototronics or biotronics displays," and did not know "what pixels for phototronics or biotronics would look like." Appx5044-5045, 292:22–293:13; *see* Appx4624, 160:18–20 (not sure for "some of these exotic biotronics, phototronics, exactly what he was thinking"). Dr. Pattison likewise admitted he did not know what a "surface emitting display" is, another "technology" listed by Phan, Appx5043, 291:6–16; *see* Appx4624, 160:11–13, nor did he know what

Phan meant by "electronic inks," "digital light processing," and "electromechanics," Appx4624, 160:4–10; Appx5044, 292:11–21. A POSITA would not understand Phan to teach pixel arrangements for all display "technologies" referenced in its list.

In addition, Appellants take Phan's list out of context. Phan does not state or suggest that each listed display technology could be implemented with any of the varied pixel arrangements depicted in its figures. Phan does not relate this laundry list to its figures at all. In the sentence relied upon by Appellants and the Board, Phan merely states generally that its "invention relates to a display comprising pixels and dots," and then identifies "Organic Light Emitting Diode (OLED)" in the middle of its laundry list as one example of a "display technology" having displays comprising pixels and dots. Appx3121, 1:18–29. Phan does not "teach that its pixel arrangements apply to OLEDs." Resp. 59; *see id.* at 61. Identifying OLED as an example of a display technology that uses pixels and dots does not amount to a teaching or suggestion that Phan's particular pixel arrangements can be implemented in an OLED display.

Far from "teaching" a POSITA different pixel arrangements for each listed "display technology," Phan's laundry list merely conveys that,

as Dr. Pattison himself suggested, Phan was attempting to "future-proof[]" his patent. Appx4624, 160:21. A POSITA would have had no reason to believe that Phan's invention could actually be implemented with every listed "technology," let alone that every different pixel arrangement shown in a figure of Phan could be implemented with every display "technology." The unbounded list in Phan does not guide a POSITA toward using OLEDs any more than it guides a POSITA toward using the non-existent "phototronics" or "biotronics" technologies. So flawed is Appellants' logic that their expert, Dr. Pattison, contends that Phan "discloses pixel arrangements for phototronics and biotronics displays" despite not "know[ing] what pixels for phototronics or biotronics would look like." Appx5045, 293:5–17.

Appellants attempt to dismiss the fact that Phan's laundry list includes non-existent technologies by arguing that the "agreement" between the parties that Phan is deficient "did not extend to OLEDs." Resp. 54. That misses the mark. The inclusion of numerous non-existent "technologies" makes clear to a POSITA that Phan's list represents a boilerplate attempt to list all conceivable display technologies and is not a teaching that any particular technology could be implemented with any

particular pixel structure. That "OLEDs" as a general type of technology "were well-known at the time of Phan" is irrelevant. *Id.* The pertinent question is whether Phan teaches or suggests applying a particular pixel arrangement to an OLED display. It does not. And Appellants and the Board can identify nothing in Phan to suggest that OLEDs can be applied in structures according to Figures 11b and 12.

It is common for patent applicants to attempt to future-proof their patents by including generic language suggesting inventions could be applied to new or unforeseen technologies. This Court has, in a variety of different contexts, repeatedly rejected attempts to rely on such generic language as a substitute for a concrete, technical teaching.

For example, in *D Three Enterprises, LLC v. SunModo Corp.*, the patent's specification included a statement that a POSITA "will recognize certain modifications, permutations, additions and sub-combinations therefore" and that the claims should be understood "to include all such modifications, permutations, additions and sub-combinations [as being] within their true sprit [sic] and scope." 890 F.3d 1042, 1050 (Fed. Cir. 2018) (internal quotations omitted). The Court held that later-drafted claims lacked written description support, because this "boilerplate

language . . . is not sufficient to show adequate disclosure of the actual combinations" required by the claims. *Id.* at 1051.

Similarly, in *Automotive Technologies International, Inc. v. BMW of North America, Inc.*, the specification of a patent related to side-impact sensors used to deploy airbags contained a statement that, in an electronic sensor, "[t]he motion . . . can be sensed by a variety of technologies using, for example, optics, resistance change, capacitance change or magnetic reluctance change." 501 F.3d 1274, 1283 (Fed. Cir. 2007). The Court held that a mere listing of technologies did not constitute an enabling disclosure, because it "fails to provide a structure or description of how a person having ordinary skill in the art would make or use an electronic side impact sensor." *Id.* "Noticeably absent," the Court emphasized, "is any discussion of the circuitry involved" to make the sensor work. *Id.*

These cases reflect a consistent principle that generalized references to broad technological categories do not disclose specific structures or arrangements. As this Court's precedent in *Otsuka Pharmaceutical Co. v. Sandoz, Inc.*, 678 F.3d 1280, 1294 (Fed. Cir. 2012)

reflects, that principle applies with equal force in the obviousness context.

The Board's finding here is inconsistent with *Otsuka*, which explained that a "laundry list" of possibilities does not make any particular choice from that list obvious. 678 F.3d at 1294. Appellants' attempt to distinguish *Otsuka* fails. While Appellants point out the large number of compounds in *Otsuka*, they fail to acknowledge the scope of Phan's actual list. Phan's list is not "fifteen technologies" as Appellants assert, Resp. 51–52, but rather an unbounded list inclusive of "any light sources known or invented in the future," Appx3121, 1:27–28, a potentially infinite set. And as in *Otsuka*, a POSITA would not believe that all of the encompassed "technologies" could be implemented to carry out Phan's disclosed invention.

Phan's single passing reference to "OLED" underscores the basic point: A POSITA would understand that Phan's list is not a considered set of technical alternatives based on the particular requirements of each individual technology, but boilerplate language intended to cast the broadest possible net.

Appellants and the Board cite nothing but the level of a POSITA to conclude that a POSITA "would have been inclined to link Phan's disclosed pixel arrangements with OLEDs." Resp. 46–47. But the fact that a POSITA would have had experience with OLED displays does not support Appellants' position and cannot supply the required motivation. Phan's mere statements that its invention "relates to" a display comprising pixels and dots, Appx3121, 1:18–19, and that OLED displays are among the many examples of displays comprising pixels and dots, Appx3121, 1:18–24, do not together constitute a teaching that any (let alone all) of the pixel arrangements depicted in Phan's figures could be implemented in an OLED display. Undisputed evidence shows that the opposite is true—that the details of an underlying light-emitting technology affect the design of pixel arrangements and layouts suitable for that technology. Appx3737-3742, ¶¶ 38–43; Appx3756, ¶ 73; Appx3820-3821, ¶ 202; Appx3865, ¶ 278; Appx4505-4507, 41:6–43:4; Appx4508-4509, 44:13–45:19. For example, the '803 and '683 patents teach to make the blue pixels largest because their organic light-emitting materials "have the shortest lifespan," *see, e.g.*, Appx271, 6:43–50, whereas this would not be a design consideration for pixels in other

display technologies such as LCDs, *see, e.g.*, Appx3737-3738, ¶ 38; Appx3741-3742, ¶ 43.

Moreover, Phan's invention is not a particular pixel arrangement, much less any structure for OLEDs. Rather, Phan concerns a method of driving a display by creating virtual "[d]ynamic pixels" that are "generated dynamically" and are distinct from the physical "static pixels" comprising dots—a point Appellants themselves acknowledged in their opening brief but now try to sidestep.[1] OB 11–12 (Appellants explaining that "Phan's innovation is circuitry that allows each dot to be controlled" to "create the impression of a display with higher resolution").

Indeed, to the extent that Phan addresses pixel arrangements, it states that "the spatial arrangement of the different colour dots 13, 14, 15 is not critical." Appx3123, 5:4–5; *see also* Appx3122, 4:36–38 ("The precise arrangement of the various colour dots 13, 14, 15 is not critical.").

[1] This is not "a new argument on appeal," as Appellants erroneously claim. Resp. 55. SDC argued in both its Patent Owner Response and at oral argument, that Phan is directed to a method of driving the display to create virtual "dynamic pixels," not to the arrangement of static pixels. *See, e.g.*, Appx596 (describing "Phan's virtual driving method" as "the heart of Phan's disclosure"); Appx917 (explaining that pixel arrangements are not "the invention of Phan").

And in Figures 1a-c, 3a-e, 10a-b, and 11a-b, Phan discloses a host of different types of possible pixel arrangements. Thus, even if Phan's laundry list of different technologies could be read to suggest that its driving method might in theory be applied to an OLED display, nothing in Phan suggests that any particular pixel arrangement—let alone that of Figure 11b modified with Figure 12—can be or would be used in such an OLED display.

### B. Appellants fail to identify evidence of any motivation to modify Phan's disclosure to create a pixel arrangement structure for an OLED display.

Appellants, like the Board, fail to identify any motivation to modify Phan's Figures 11b and 12 to create an OLED display satisfying the requirements of the challenged claims—because there was none. Their principal argument, that "a skilled artisan, who by definition has two years of OLED display design [experience], would know how to implement Phan's pixel arrangements in OLEDs," Resp. 59, does not establish a *motivation* to do so, let alone to modify Figures 11b and 12 out of the myriad of pixel arrangement structures depicted in the figures of Phan.

It is well-established that the Board may not "rel[y] upon the high level of skill in the art to provide the necessary motivation" to modify or combine prior art references. *In re Rouffet*, 149 F.3d 1350, 1357 (Fed. Cir. 1998). To the extent the Board invokes the knowledge of a POSITA, it must "explain what specific understanding or technological principle within the knowledge of one of ordinary skill in the art would have suggested the combination." *Id.* Neither the Appellants nor the Board did so.

Here, there is not only an absence of evidence of any motivation for a POSITA to make the modifications required by Appellants' theory, but there is unrebutted evidence that the POSITA would not believe that a display of Figures 11b and 12 could be implemented in an OLED display consistent with Phan's disclosures, given particular technical obstacles.

*First*, a POSITA would recognize that the structure of Phan's displays differs crucially from that of any existing OLED display. Appx3759, ¶ 79; Appx3821, ¶ 203. In Phan's display, "each dot has a receiver of its own" that is connected to an "optical fiber network" to "convert digital information transmitted through" the network "into luminous intensity levels" for the dots. Appx3123, 5:16–20. Both sides'

experts highlighted that an important feature of Phan's displays is that each dot having a receiver of its own is Appx3759, ¶ 79; Appx3017, ¶ 332. As Appellants' expert Dr. Pattison emphasized, this structure "allows [each dot] to be addressed and controlled by 'control circuitry 19 through a network 20,'" and thus "allows for the use of what [Phan] calls "dynamic-generated . . . pixels." Appx3017-3018, ¶¶ 332–334 (citing Appx3121-3122, 2:63–3:18; Appx3123, 5:12–21). The "dynamic-generated" pixels are the heart of Phan's invention.

Dr. Kymissis provided unrebutted testimony that "OLED displays do not use optical fiber networks or receivers." Appx3821, ¶ 203. Phan provides no guidance as to how to invent an OLED display with dots having such receivers. This itself illustrates the lack of substantial evidence for the Board's finding. The Board, however, erroneously dismissed this deficiency in Appellants' theory by characterizing Phan's requirement of receivers for each dot as merely a feature of "the particular embodiments of Phan." Appx49. As both sides' experts explained, however, it is a feature of Phan's displays tied to its "dynamic-generated" pixels. Indeed, Appellants themselves acknowledge that

"Phan's innovation is circuitry that allows each dot to be controlled" to "create the impression of a display with higher resolution." OB 11–12.

*Second*, Phan states that its displays require "high-frequency repetition, preferably at a rate of minimum 100 Hz for passive driving display." Appx3123, 5:23–24. As the Board found, it is undisputed that Phan discloses only a passive-matrix display. Appx90; OB 27. Dr. Kymissis explained that such high-frequency driving "would be impractical to implement with a passive-matrix OLED display." Appx3826-3827, ¶ 212; *see* Appx3827-3828, ¶ 213. Any attempt to implement Phan's driving method on an OLED display would require applying "such high voltage and current density for an OLED" that it would cause "rapid degradation of the OLEDs, decreased power conversion efficiency and increased power consumption, voltage drops along row and column electrodes, and leakage current through non-selected pixels." Appx3826-3827, ¶ 212. Appellants expert expressed no disagreement. Neither Phan nor Appellants' expert provide any explanation of how Phan's sole driving method for forming the "dynamic pixels at the heart of Phan's invention," Resp. 3, 76, could be implemented in an OLED display.

*Third*, as Appellants acknowledge, Resp. 68–69, Phan states that in its quad-pixel structures dots (i.e., subpixels) are "contoured by black mask or black barrier ribs," Appx3122, 3:56–4:4; Appx3123, 5:39–54; *see* Appx3121, 1:30–34. The same is shown in Phan's figures. Dr. Kymissis provided unrebutted testimony that a POSITA would have understood that black masks are used in LCDs, that barrier ribs are used in plasma displays, and that "[n]either were used in OLED displays at the time." Appx3822, ¶ 205. Dr. Kymissis also explained that Figure 11b "show[s] essentially no spacing between adjacent dots," which "were not feasible to implement in an OLED display" given the "physical limitations in the manufacturing process" for OLED displays. Appx3822-3825, ¶¶ 206–208. Appellants' expert Dr. Pattison had no response. *See generally* Appx3324-3352. Dr. Kymissis's uncontroverted testimony is supported by Phan's disclosure, which discusses the structure of dots and pixels used in "LCD displays" and "Plasma (PDP)" displays, but *not* OLED displays, in discussing the "known display[s] of the kind used in video, film and computer technology." *See* Appx3121, 1:56–2:46. Phan provides no suggestion that the quad-pixel shown in Figure 11b could be used in an OLED display, let alone any guidance as to how. Yet Appellants and the

Board rely on the pixel structure of Phan's Figure 11b as the basis for the alleged obviousness.

The Board did not identify any specific understanding or principles that a POSITA could apply to address these difficulties. Nor have Appellants, because there is none. Phan provided no such teaching or guidance, nor did any other reference.

Instead, Appellants invoke the level of skill in the art to assert, without evidence or specifics, that a POSITA could figure it out, somehow. Resp. 46–47, 50. This Court has rejected such wishful thinking, which is not a proper obviousness analysis:

> If such a rote invocation could suffice to supply a motivation to combine, the more sophisticated scientific fields would rarely, if ever, experience a patentable technical advance. Instead, in complex scientific fields, the Board could routinely identify the prior art elements in an application, invoke the lofty level of skill, and rest its case for rejection.

*In re Rouffet*, 149 F.3d at 1357.

Moreover, even assuming, contrary to all of the evidence, that a POSITA *could* overcome these difficulties, Appellants have not identified any motivation a POSITA would have to modify Phan's Figures 11b and 12. Appellants do not identify any problems or deficiencies that would be cured by trying to convert Phan's display to use OLEDs. Nor do they

identify any benefits that would accrue from such a modification. It is insufficient simply to claim, as Appellants do, that a POSITA could have modified Phan or that Phan taught that its pixel arrangements can be used in OLEDs. *See* Resp. 45–46 ("Appellants further demonstrated that Phan's teachings can be employed with various display technologies, including Organic Light Emitting Diode (OLED) displays.") (cleaned up); *id.* at 59 ("[T]he pixel arrangements in Phan can be used in OLEDs."); *id.* at 61 ("Phan itself teaches that its pixel arrangements can be applied to an OLED display."). There must be a *reason* to make the modification. Neither the Board nor Appellants identified one.

To distract from this failing, Appellants claim SDC "mischaracterize[d]" the Board's decision. Resp. 57–58. That is meritless. The Board found that "Phan teaches that its disclosed pixel arrangements *can be* applied to OLED displays," *id.* (quoting Appx47) (emphasis added), not that there was any reason that they *would be*, much less the specific arrangements of Figures 11b and 12. The Board did not identify any motivation for a POSITA to do so, as SDC explained. Br. 81–83. Appellants have no substantive response, and it is well established that the fact that something "can be" done does not provide a

motivation to do it. *See, e.g.*, *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1073 (Fed. Cir. 2015).

There being no support in Phan, Appellants and the Board turn to an unrelated reference, U.S. Patent No. 6,867,549 ("Cok"), which Appellants did not argue as part of any combination. *See* Resp. 47–48. Appellants also neglect to mention that Cok was specifically considered during the prosecution of the '803 patent and the claims were allowed over it. *See* Appx262; Appx2079; Appx1973. In any event, Appellants rely on the faulty premise that Cok disclosed the same structure as in Phan. Yet Cok's technology is different than Phan in material respects.

For example, as discussed above, Phan teaches that it is important that in its displays, each dot has an individually addressable "receiver." Appx3123, 5:12–21. Cok, by contrast, has no disclosure or suggestion of a structure in which pixels or subpixels ("dots") are connected to "receivers," nor did Appellants ever indicate how receivers could be accommodated. As another example, Phan's Figure 11b structure uses barrier ribs or black mask, depicted in the black shaded areas, to "contour" the dots (i.e., sub-pixels) and pixels. Appx3122, 3:64–4:4; Appx3123, 5:47–54. In Cok, by contrast, the sub-pixels are spaced apart

and have no such structures. Appx3343, ¶ 87 (Appellants' expert Dr. Pattison testifying that in Figure 1 of Cok, "the red, green, and blue dots are separated by small, generally equal amounts of space"). Thus, Cok's Figure 1 does not "disclose[] the same pixel arrangement as Phan['s]" Figure 11b. Appx50.

Cok also has no teaching of how any of the pixels depicted in its figures, including Figure 1, would be applied across Cok's display. *Compare* Appx3299-3302 (Cok Figs. 1–7), *with* Appx3113 (Phan Fig. 12). Cok does not support interpreting Phan's Figure 11b quad-pixel, particularly when combined with Phan's Figure 12 display as Appellants propose, as a pixel arrangement structure for an OLED display.

Appellants make the inaccurate claim that "Samsung's expert admitt[ed] that Cok's Figure 1 has the same sub-pixel configuration, just rotated 180 degrees." Resp. 48. To the contrary, when asked whether the figures "have the same basic shape" "besides being rotated 180 degrees," Dr. Kymissis explained that the figures "have some similarities, but they also have some differences." Appx3424, 72:13–19. "For example, Phan explicitly calls out a number of features such as the barrier ribs and black

mask, which are not discussed in Cok." *Id.* Notably, Appellants' expert never claimed the structures were the same.

Thus, Cok provides no motivation to attempt to modify Phan's receiver-and-fiber-optic-network displays with "dynamic-generated" pixels to try to make an OLED display, and once again, Appellants have not identified any such motivation. Nor have Appellants identified anything in Cok that would aid a POSITA in overcoming the formidable challenges that a POSITA would encounter in attempting to modify Phan in the manner Appellants assert, or any teachings in Cok that would have given a POSITA a reason to attempt such an undertaking.

### C. Appellants identify no evidence that a POSITA would have had a reasonable expectation of success in modifying Phan's disclosure to create a pixel arrangement structure for an OLED display.

Finally, there is no substantial evidence to support the Board's finding of a reasonable expectation of success.

Appellants wholly failed to show that a POSITA would have had a reasonable expectation of success in modifying Phan to create a pixel arrangement for an OLED display. Appellants claim that "[t]he Board properly credited Appellants' relevant expert testimony." Resp. 60–61. But as SDC explained in its Principal and Response Brief, Appellant's

expert Dr. Pattison never offered any opinion as to why or how a POSITA would purportedly have had a reasonable expectation of success in modifying Phan to use OLEDs, much less any supporting explanation. Br. 85. "Conclusory expert testimony does not qualify as substantial evidence." *TQ Delta, LLC v. CISCO Sys., Inc.*, 942 F.3d 1352, 1358 (Fed. Cir. 2019); *see id.* at 1359 ("'[O]bviousness grounds,' in particular, 'cannot be sustained by mere conclusory statements.'") (citation omitted).

Appellants have effectively conceded that SDC is correct and that the Board erred in finding a reasonable expectation of success. Unable to identify any relevant opinions regarding expectation of success, Appellants rely on Dr. Pattison's opinions regarding motivation to combine, asserting that "[a] skilled artisan would not be 'motivated' to use this technology with no reasonable expectation of success." Resp. 61. But motivation to combine and reasonable expectation of success are "two different legal concepts." *Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1367 (Fed. Cir. 2016). Even "a finding by the Board that a patent challenger has demonstrated a motivation to combine references does not necessarily imply that the challenger has also met its burden of showing a reasonable expectation of success in

achieving" the claimed invention. *Eli Lilly and Co. v. Teva Pharms. Int'l GmbH*, 8 F.4th 1331, 1344 (Fed. Cir. 2021).

Further, Dr. Kymissis provided detailed technical reasons, rooted in Phan's disclosures, why a POSITA would not have reasonably expected to succeed in attempting to make an OLED display based on Phan's Figures 11b and 12 consistent with Phan's disclosures. *See supra* § I.B. In Phan, "each dot has a receiver of its own" connected to an "optical fiber network" to implement Phan's dynamic pixels, Appx3123, 5:16–20, which is inconsistent with OLED displays, Appx3821, ¶ 203. Phan's "high-frequency repetition" driving method, Appx3123, 5:23–24, is impractical to implement with OLED displays, Appx3826-3827, ¶ 212. And Phan's Figure 11b quad-pixel is "contoured by black mask or black barrier ribs," Appx3122, 3:64–4:4; Appx3123, 5:47–54, neither of which were used in OLED displays at the time, Appx3822, ¶ 205. Notably, despite having the opportunity to respond, Dr. Pattison provided no rebuttal.

Appellants' claim that SDC failed to name any "unique challenges" associated with OLEDs or tie them to any error in the Board's finding, Resp. 62, is incorrect. SDC explained, with citations to the patent specifications and Dr. Kymissis's testimony, why Phan's Figure 11b

quad-pixel is incompatible with OLED displays given the manufacturing limitations of OLEDs. Br. 79–81, 84 (citing Appx269, 1:38–45, Appx3822-3823).

Appellants also erroneously claim that SDC raised an enablement argument. Resp. 63. As SDC stated in its Principal and Response Brief, the issue is not enablement, but whether a POSITA would have had a reasonable expectation of success, which a POSITA here would not have had. Br. 83. The citations to *Raytheon Techs. Corp. v. General Electric Co.*, 993 F.3d 1374, 1381 (Fed. Cir. 2021) and *Creative Kingdoms, LLC v. Int'l Trade Comm'n*, 588 F. App'x 993, 994–95 (Fed. Cir. 2014) simply support the principle that a mere listing of different technologies cannot substitute for disclosures of whether or how a technology of interest could actually be implemented.

Nor can Appellants' invocation of Cok, Resp. 61–62, substitute for a reasonable-expectation-of-success analysis. Appellants ignore Phan's disclosures about the features of its displays, and the fact that Phan's displays are different from Cok's displays in fundamental respects. For instance, unlike in Phan's displays, the pixels in Cok's displays are not driven by receivers connected to an optical fiber network, *see* Appx3123,

5:12–21; Cok's displays do not operate at the high voltages and frequencies required for Phan's dynamic pixels, *see* Appx3123, 5:20–24; Appx3826-3828, ¶¶ 212–213; and Cok's displays do not contour pixels or "dots" with black mask or barrier ribs, Appx3424, 72:17–19.

Appellants cannot evade the lack of evidence of a reasonable expectation of success under Appellants' theory of modifying Phan's Figures 11b and 12 by pointing to unrelated disclosures of Cok, as Cok did not attempt to address the pertinent technological problems nor did Cok attempt to implement a display meeting the requirements of Phan. The unrebutted evidence establishes that converting Phan's display to use OLEDs would be highly uncertain if possible at all. Appx3820-3828, ¶¶ 202–215. Neither the Board nor Appellants identified any disclosure in Cok that would teach a POSITA how to overcome these difficulties with a reasonable expectation of success.

Rather, Appellants' argument does exactly what precedent forbids—attempting to substitute an alleged motivation to combine for the required showing that a POSITA would have reasonably expected success in modifying Phan to implement an OLED pixel arrangement.

Because there is not substantial evidence of a reasonable expectation of success, the Board's finding of obviousness should be reversed.

## II. The Board erred in finding that Phan renders obvious the "virtual square" required by each claim of the '803 patent.

The Board's obviousness finding as to the claims of the '803 patent lacks substantial evidence for the additional reason that Phan does not disclose or suggest the "virtual square" of pixels required by the challenged claims. There is not a single reference to a virtual square anywhere in Phan—not in its written description, its figures, or its claims. Instead, Appellants rely entirely on a figure created by their attorneys. Not only does Appellants' figure not appear in Phan, it does not accurately represent Phan's teachings.

Appellants purport to rely on a display based on Phan's Figure 12. There is no dispute that the quad-pixels in Phan's display of Figure 12 are separated by spaces.



Appx3113, Fig. 12 (annotated). Yet when Appellants purported to "combine" Figures 11b and 12, they improperly removed the spaces between the quad-pixels.




Appx368. There is no basis in Phan to do so.

Appellants' only response—that Phan allegedly teaches that the "pixels are 'regularly disposed' in a repeating 'grid' or 'matrix,'" Resp. 72—does not support, let alone justify, their alteration of Phan's figures to remove the spaces between pixels. As Figure 12 itself demonstrates, pixels may be spaced apart in an arrangement where the pixels are both "regularly disposed" and in a repeating "grid" or "matrix." Appellants do not and cannot dispute that the pixels depicted in Figure 12 are "regularly disposed." *Id.* Nor can Appellants dispute that the pixels depicted in Figure 12 also form a "repeating 'grid' or 'matrix.'" *Id.* Indeed, it is commonplace to have structures that are spaced apart while being "regularly disposed" in a "grid" or "matrix," as checkers on a checkerboard

exemplify. More to the point, in the technology of displays, it is unrebutted that pixels often are spaced apart while being arranged in a grid or matrix. SDC's Principal and Response Brief offered examples demonstrating this through images from actual manufactured displays and literature. Br. 92–93 (citing Appx3833-3837). Appellants offer no response.

Appellants misread the Board's decision to assert that SDC posited that the pixels should be "irregularly spaced." Resp. 72 (citing Appx57-58). SDC never made such a claim. Instead, SDC noted that tiling Phan's Figure 11b according to Phan's Figure 12 would result, when analyzed according to the claims of the '803 patent, in an irregular quadrilateral, not a square. Appx57-58 (citing Appx597). Contrary to Appellants' assertion, it does not "directly contradict[] Phan's teachings," Resp. 75, to acknowledge, and give effect to, the spaces between the quad-pixels that Phan specifically teaches in Figure 12. To the contrary, the existence of spaces between the quad-pixels is *part of* Phan's teachings, as illustrated not only by Figure 12, but also by Figures 2a, 2b and 7. Indeed, Appellants disregard the admission of their own expert that "Phan's quad

pixels could be laid out in a way according to Phan that would ***not*** form a virtual square." Appx5049, 297:6–9 (emphasis added).

Appellants' argument is also logically inconsistent. Appellants repeatedly claim that "every drawing figure in Phan" shows that the dots are "evenly spaced." Resp. 72–73, 75. Thus, Appellants must accept that, notwithstanding the spaces between quad pixels, the dots in Figure 12 are "evenly spaced." Appellants cannot claim *both* that Figure 12 shows evenly spaced dots *and* that even spacing requires eliminating the spaces between quad-pixels.

Appellants also repeatedly misstate and mischaracterize SDC's arguments to attack strawmen. None of SDC's arguments depend on "particular sizes" of the dots or the sizes of the spaces between quad-pixels in Figure 12, nor whether or not Phan's figures are drawn to scale. For example, SDC has never disputed that "Phan does not describe its figures as drawn to scale." Resp. 75 (quoting Appx50). And SDC does not disagree that "the Board generally does not 'rely on patent drawings for showing particular sizes.'" Resp. 75–76 (quoting Appx50).

Rather, SDC points out the incontrovertible fact that Figure 12 of Phan shows that there is spacing between the quad-pixels. As explained

in SDC's Principal and Response Brief, the issue is not one of particular sizes or dimensions on a drawing, but rather that Appellants' invalidity theory requires making a *qualitative* change to Phan's Figure 12 by completely removing the spaces between quad-pixels, when the quad-pixels are specifically shown by Phan to be spaced apart. Br. 91. Having spacing between pixels was a type of structure known in the prior art, and one shown in Figure 12. SDC explained—and Appellants do not dispute—that if there is *any* space between quad-pixels, no matter how small, in Phan's Figure 12, the dots will not form the required virtual square. *Id.* The particular size of that spacing is immaterial. *Hockerson-Halberstadt* therefore does not apply, and the Board erred in relying on it to justify completely eliminating a feature of Figure 12—the spaces between quad-pixels—to create a structure that was not described or suggested in Phan. *See Hockerson-Halberstadt, Inc. v. Avia Group International, Inc.*, 222 F.3d 951 (Fed. Cir. 2000). SDC did not "invite[] or provoke[]" the Board's error, Resp. 76, merely by citing the case.

To assert "inconsistency" where there is none, Appellants also incorrectly conflate Phan's "dots" with its "pixels." *See* Resp. 77–78. In Phan, a "dot" is a single light-emitting element of a specific color, e.g.,

red, green, or blue. Appx3121, 1:61–64 ("Dots are sources of luminous radiation the light of which is mixed to generate luminous mixed colours in a process referred to as additive mixing."). The "dot" in Phan is a subunit of a pixel. In contrast, Phan's "pixels" are groupings of multiple "dots." *Id.*, 1:59–61 ("The pixels generally consist of so-called dots representing the three basic colours red, green and blue."). It is not inconsistent to note that "Phan's figures depict essentially no spacing *between adjacent dots*" within a pixel, as seen in Figure 11b, Appx596, while at the same time showing there are spaces *between pixels*, as seen in Figure 12.

Finally, even assuming *arguendo* that the spaces between the quad-pixels of Figure 12 *could* be removed, there still would not be substantial evidence to support the Board's obviousness finding. "[O]bviousness concerns whether a skilled artisan not only *could have made* but *would have been motivated to make* the combinations or modifications of prior art to arrive at the claimed invention." *Belden*, 805 F.3d at 1073 (emphasis in original). The requirement that the Board identify a specific motivation to combine or modify the prior art is essential to prevent "impermissible *ex post* reasoning and hindsight bias." *TQ Delta*, 942 F.3d

at 1361. As SDC pointed out in its Principal and Response Brief, the Board failed to identify any motivation to modify Phan to remove the spaces between the quad-pixels. Br. 94. Appellants do not contend that the Board found a motivation to remove the spaces, nor do they identify any such motivation.

The lack of any motivation to remove the spaces between Phan's pixels led the Board to rely on the kind of "*ex post* reasoning" that the Court warned against *TQ Delta*. When discussing the Murai reference, for example, the Board acknowledged that the pixels in "OLED displays are spaced farther apart than [in] the LCD displays that Murai primarily addresses." Appx110. The Board correctly concluded that, given the importance of the spaces between pixels, it would not have been obvious to combine Murai and Yamada as Appellants proposed. *Id.* Yet when considering Phan, the Board ignored the need to separate the pixels and assumed, without evidence, that the spaces between pixels in an OLED display could be eliminated entirely.

In *TQ Delta*, this Court reversed the Board's obviousness finding because the Board relied on "conclusory and unsupported expert testimony." *Id.* Here, there is no evidence of a motivation to modify Phan

in the way that Appellants' propose that would meet the "virtual square" limitation of the '803 patent. The Board's obviousness finding as to the challenged claims of the '803 patent should therefore be reversed.

## CONCLUSION

The Board's conclusion that claims 1–4 and 19–21 of the '803 patent and claims 1, 4–10, 13, and 15 of the '683 patent would have been obvious over Phan lacks substantial evidence and should be reversed.

Dated: April 1, 2026

/s/ *Jeffrey H. Lerner*

Jeffrey H. Lerner
Scott C. Weidenfeller
Richard L. Rainey
Matthew Kudzin
COVINGTON & BURLING LLP
850 Tenth Street NW
Washington, DC 20001
(202) 662-6000
jlerner@cov.com
rrainey@cov.com
sweidenfeller@cov.com
mkudzin@cov.com

*Counsel for Cross-Appellant*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing reply brief of Cross-Appellant Samsung Display Co., Ltd. complies with the type-volume limitation of Fed. Cir. R. 32(b)(1) and contains 6,825 words, excluding the portions of the brief exempted by Fed. Cir. R. 32(b)(2).

I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been composed in a proportionally spaced typeface using Microsoft Word in 14 point Century Schoolbook font.

/s/ *Jeffrey H. Lerner*

Jeffrey H. Lerner
COVINGTON & BURLING LLP
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
jlerner@cov.com